SCRIPPS TEXAS NEWSPAPERS, L.P., Appellant,

v.

Dr. Alberto BELALCAZAR, Appellee.

No. 13–02–414–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Feb. 27, 2003.

Jorge C. Rangel, The Rangel Law Firm, Corpus Christi, James L. Branton, San Antonio, for Appellant.

Sonia M. Rodriguez, Branton & Hall, San Antonio, for Appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Appellant, Scripps Texas Newspapers, L.P. (Scripps), a media defendant, brings this interlocutory appeal pursuant to section 51.04 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6) (Vernon Supp. 2003) (authorizing interlocutory appeal from denial of summary judgment based on claim against or defense by member of media). Dr. Alberto L. Belalcazar, appellee, sued Scripps to recover damages for alleged reputational injuries he claimed resulted from articles published in the *Corpus Christi Caller Times (Caller Times)*.[1]

1. Scripps publishes the *Caller Times*.

Scripps filed traditional and no-evidence motions for summary judgment, both of which were denied by the trial court. *See* TEX.R. CIV. P. 166a(c) & (i). Scripps appeals from the denial of its motions.

Scripps contends the trial court erred in denying its traditional motion for summary judgment because the articles were true and/or substantially true and privileged. Scripps also contends the court erred because the evidence conclusively negated any type of fault, either negligence or actual malice, on its part. Scripps further asserts the trial court erred in denying its no-evidence motion for summary judgment because Dr. Belalcazar provided no evidence that the statements were false and/or defamatory, or that it was at fault. We affirm.

## I. BACKGROUND

On December 22, 1997, Ruby Ann Ernst filed a medical malpractice suit against Dr. Belalcazar and Doctor's Regional Medical Hospital (Hospital) alleging Dr. Belalcazar and the Hospital were negligent in failing to remove a laparotomy pad from her abdomen during an appendectomy. On September 3, 1999, Ernst's attorney filed a motion to dismiss Dr. Belalcazar from the lawsuit. The motion stated that "the Plaintiff no longer desires to prosecute her claims against Defendant Alberto L. Belalcazar, M.D." On September 8, 1999, without stating a reason, the trial court signed an agreed order dismissing Dr. Belalcazar from the case. Ernst amended her pleadings to reflect that her claims of negligence were only against the Hospital. Dr. Belalcazar was not referenced in the amended petition. Ernst's lawsuit proceeded to trial against the Hospital on Monday, March 6, 2000.

On March 8, 2000, Scripps ran an article in the *Caller–Times* titled "Surgical pad left inside patient, lawsuit alleges," and sub-titled, "Physician, Doctors Regional [H]ospital sued for $2 million." The article reported that the lawsuit said "[d]octors left a surgical pad the size of a handkerchief inside the body of a 28–year–old Corpus Christi woman after removing her appendix." The article also stated that Dr. Belalcazar, who removed Ernst's appendix, was named in the lawsuit, and was being sued, along with the Hospital, for more than two million dollars.

On March 9, 2000, in a second article, the *Caller Times* reported "[a] Corpus Christi woman whose surgeon is accused of leaving a handkerchief-size wad of gauze inside her after removing her appendix will have to endure physical therapy for the rest of her life, according to testimony Wednesday in a $2 million lawsuit." The article stated that "Ernst is suing Doctors Regional Medical Center, and her surgeon, Dr. Alberto Belalcazar, in Judge Jack Hunter's 94th District Court."

On March 10, 2000, a third article appeared in the *Caller–Times*. It acknowledged Dr. Belalcazar's dismissal from the lawsuit, and stated that, according to his attorney, Dr. Belalcazar was dismissed "from the suit prior to trial because there was no evidence that he did anything wrong." The article explained that Ernst's attorney could not be reached for comment. The *Caller–Times* also printed a correction/clarification article on March 10, 2000, recognizing its error in identifying Dr. Belalcazar as a defendant in the lawsuit when he had been dismissed by an agreed order on September 8, 1999.

## II. MOTION TO REFILE EXPERT'S AFFIDAVIT

Dr. Belalcazar has filed a motion with this Court requesting permission to reference the affidavit of his expert, Joseph C. Goulden, that was misfiled in the summary judgment proceeding below. Scripps argues the Goulden affidavit was made inadmissible because it was misfiled and was not incorporated into Dr. Belalcazar's responses to Scripps's motions for summary judgment.

Dr. Belalcazar sued Scripps and Entravision Communications Corporation[2] in the 94th Judicial District Court, Nueces County, Texas, cause number 97–6192C, for defamation. Both media defendants moved for summary judgment. Dr. Belalcazar filed written responses to each motion and served his responses on all parties. At a consolidated hearing, the trial court heard all motions for summary judgment, and later denied all motions. After separate appeals had been filed,[3] counsel for Dr. Belalcazar became aware that the affidavits of his journalism expert, Goulden, had been misfiled in the underlying case. In response to Scripps's motions for summary judgment, Dr. Belalcazar's counsel attached as Exhibit 1, the Goulden affidavit addressing Entravision's alleged negligence in its television broadcast. Similarly, in response to the Entravision motions, Dr. Belalcazar's counsel attached as Exhibit 1, the Goulden affidavit addressing Scripps's alleged negligence in its publication of newspaper articles.

Summary judgment evidence that is not on file with the trial court cannot be considered on appeal. *See* Tex.R. Civ. P. 166a(c). In this case, however, the correct affidavit was on file, not in the responses

2. Dr. Belalcazar sued Entravision, the parent company of KORO Channel 28, for injuries allegedly sustained as a result of a television news broadcast about the *Ernst* trial.

3. Entravision appealed the trial court's denial of its motions for summary judgment in cause number 13–02–429–CV.

filed to Scripps's motions, but in Dr. Belalcazar's response to Entravision's motions.[4] The responses to Scripps's traditional and no-evidence motions that were served on Scripps referenced Goulden's affidavit, attached in the appendix, as summary judgment evidence. *See id.* Goulden's affidavit was also referenced in support of Dr. Belalcazar's allegations that Jordan, Scripps's reporter, could be faulted in many respects. *See id.* Furthermore, the trial court held a consolidated hearing on all summary judgment motions filed by Scripps and Entravision.

■■■ Moreover, while substantive defects cannot be waived by failing to object or obtain a written order in the trial court, *Bauer v. Jasso*, 946 S.W.2d 552, 556–57 (Tex.App.-Corpus Christi 1997, no writ); *see Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex.App.-Houston [1st Dist.] 1998, no pet.), defects in the form of affidavits or attachments must be specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. *See* Tex.R. Civ. P. 166a(f); *see also Green*, 1 S.W.3d at 130; *Mathis*, 982 S.W.2d at 60. A defect is substantive if the evidence is incompetent. *Mathis*, 982 S.W.2d at 60. The defect is one of form if the evidence is competent but inadmissible. *Id.*

■■ Under the facts of this case, we conclude the misfiling of the Goulden affidavit is a defect in form. Because Scripps raised no specific objection in the trial court as to the misfiled affidavit giving Dr. Belalcazar an opportunity to amend in the trial court, its complaint regarding the misfiling of the Goulden affidavit has been waived. *See* Tex.R. Civ. P. 166a(f); *see*

*also* Tex.R.App. P. 33.1 (complaint waived when ruling not obtained from trial court).

Accordingly, we grant Dr. Belalcazar's motion and allow him to cross reference the appropriate affidavit, using the clerk's record from the related appellate case, and, if necessary, to reference the respective affidavits, pending the trial court clerk's supplementation of the record.

## III. TRADITIONAL SUMMARY JUDGMENT

By its first and second issues, Scripps contends the trial court erred in denying its traditional motion for summary judgment because (1) it established the articles were substantially true and privileged, and (2) Dr. Belalcazar failed to establish negligence and/or actual malice.

### A. Standard of Review

A traditional summary judgment is proper when the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or when the defendant has conclusively established all elements of its affirmative defense. *Am. Tobacco Co., Inc., v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Crain v. Smith*, 22 S.W.3d 58, 59 (Tex.App.-Corpus Christi 2000, no pet.); *see* Tex.R. Civ. P. 166a(c). A defendant moving for summary judgment based on an affirmative defense has the burden to conclusively prove each element of the affirmative defense as a matter of law. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

We review the trial court's granting or denying of a traditional motion for sum-

---

4. Scripps does not complain that it failed to receive Dr. Belalcazar's response to Entravision's motions. The certificate of service for

that response sets out that it was hand delivered to Scripps's counsel on May 20, 2002.

mary judgment de novo. *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex.App.-San Antonio 1996, no writ); *see Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Tex. Commerce Bank–Rio Grande Valley v. Correa*, 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). An appellate court should reverse an order denying a traditional motion for summary judgment under rule 166a(c) and render judgment in the movant's favor only if the summary judgment evidence establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *Dracos*, 922 S.W.2d at 247. Furthermore, in reviewing a traditional summary judgment, "all evidence is to be construed in favor of the non-movant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved." *Alvarez v. Anesthesiology Assocs.*, 967 S.W.2d 871, 874 (Tex.App.-Corpus Christi 1998, no pet.). This standard applies to summary judgment motions in defamation actions. *Carabajal v. UTV of San Antonio, Inc.*, 961 S.W.2d 628, 630 (Tex.App.-San Antonio 1998, pet. denied) (citing *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989)).

### B. Substantial Truth Defense

 Scripps contends the trial court erred in denying its traditional motion for summary judgment because the articles at issue were substantially true.[5] A showing of substantial truth of defamatory words will defeat a defamation cause of action. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex.1990). The test of substantial truth is "whether the alleged defamatory statement was more damaging to [plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been." *Id.* at 16; *see Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex.2000) (noting substantial truth doctrine "precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details"); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 69 (Tex.App.-Waco 1990, no writ) (concluding statement is substantially true even if it greatly exaggerates plaintiff's misconduct, as long as average reader would not attach any more opprobrium to plaintiff's conduct merely because of exaggeration); *Crites v. Mullins*, 697 S.W.2d 715, 717 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.) (holding published account of judicial proceedings involving plaintiff substantially true as matter of law, thus, conditionally privileged).

 A publication can convey a defamatory meaning by omitting or juxtaposing facts, even though each individual statement considered alone might be literally true or non-defamatory. *Turner*, 38 S.W.3d at 114. This is so because a reasonable person's interpretation is based on the entirety of a publication and not individual statements. *Id.* at 115. Thus, a defendant cannot be held liable for presenting a true account of events regardless of what someone might conclude from that account. *Id.* However, the same does not hold true when there is an omission of material facts, or a misleading presentation or juxtaposition of true facts. *Id.; see Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 425 (Tex.2000); *Express Publ'g Co. v. Gonzalez*, 350 S.W.2d 589, 592 (Tex.Civ.App.-Eastland 1961, writ ref'd n.r.e.); *see also Golden Bear Distrib. Sys. v. Chase Revel, Inc.*, 708 F.2d 944, 948–49 (5th Cir.1983) (applying Texas law).

---

5. Scripps also contends the articles were true. However, because we conclude below that there remains a fact issue as to the substantial truth of statements related to Dr. Belalcazar's dismissal, we need not address the truth of the remaining statements.

■ Scripps contends the gist of the articles at issue was that Ernst sued Dr. Belalcazar for negligence because a surgical pad was left in her abdomen following an appendectomy performed by Dr. Belalcazar. Scripps asserts that the articles set out, and the evidence established, Dr. Belalcazar did perform surgery on Ernst, used laparatomy pads during the procedure, and after later determination that one of these surgical pads was left inside her, Ernst filed suit against Dr. Belalcazar accusing him of malpractice and negligence. Without addressing the truth of these statements, two of the three articles also reported that both the Hospital and Dr. Belalcazar, who removed Ernst's appendix, were being sued in a two million dollar lawsuit at the time the case went to trial in March 2000. No mention was made of Ernst's voluntary dismissal of Dr. Belalcazar six months earlier. In a third article and in a correction published on March 10, 2000, Scripps acknowledged its error.

The summary judgment evidence attached to Dr. Belalcazar's response includes the deposition testimony of Gracie Felan, an employee of Dr. Belalcazar at the time the articles appeared. She testified "when the articles came out . . . some of the doctors just slacked off on the referrals. And we were having a hard time. We weren't getting as many new patients as we had been getting. . . . It wasn't as steady as it had been before." Felan also testified that the daughter of a patient who was scheduled for surgery called to cancel the surgery because of the articles she and her mother had read.

While Texas law precludes libel claims based on factual inaccuracies that have no effect on the gist or sting of the publication, we cannot conclude that reporting Dr. Belalcazar remained a party to the lawsuit when, in fact, he had been dismissed, did not cast greater suspicion on Dr. Belalca-

zar's conduct and did not damage his reputation more so, in the mind of the average reader, than the literal truth would have done. *See McIlvain,* 794 S.W.2d at 16. Neither can we conclude that the entirety of the publications did not convey a false and defamatory meaning by omitting or juxtaposing facts. *See Turner,* 38 S.W.3d at 114–15.

Therefore, construing the evidence in favor of Dr. Belalcazar, the non-movant, we conclude that fact issues remain regarding Scripps's substantial truth defense. *See Alvarez,* 967 S.W.2d at 874. Scripps has failed to conclusively establish all elements of its affirmative defense as a matter of law. *See Grinnell,* 951 S.W.2d at 425; *Walker,* 924 S.W.2d at 377; *Crain,* 22 S.W.3d at 59; *see also* Tex.R. Civ. P. 166a(c). The trial court did not err in denying Scripps's traditional summary judgment on this basis.

## C. Privilege Defense

■ Scripps also contends the articles are privileged as fair, accurate and impartial accounts of a judicial proceeding. The publication by a newspaper of a fair, true, and impartial account of a judicial proceeding is privileged and is not a ground for a libel action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.002 (Vernon 1997); *see also Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (special protected nature of accurate reports of judicial proceedings through the First Amendment of the United States Constitution has repeatedly been recognized); *Wavell v. Caller–Times Publ'g Co.,* 809 S.W.2d 633, 635 (Tex.App.-Corpus Christi 1991, writ denied) *abrogated on other grounds by Cain v. Hearst Corp.,* 878 S.W.2d 577 (Tex.1994) (both United States and Texas Constitutions "prohibit civil damages against a newspaper for accurate or substantially true accounts of

newsworthy matters arising from and pertaining to judicial proceedings").

We have concluded, however, Scripps did not establish the substantial truth of its accounts of the judicial proceeding, specifically as it relates to Dr. Belalcazar's dismissal. The accuracy of the accounts has not been shown. Therefore, the privilege does not apply, as a matter of law, in this case. The court did not err in denying the summary judgment on this basis.

Scripps's first issue is overruled.

### D. Negligence Element of Cause of Action

■ By its second issue, Scripps attacks the negligence element of Dr. Belalcazar's defamation claim. Scripps contends its traditional summary judgment evidence conclusively establishes that its reporters and editors acted reasonably under the circumstances, and met the applicable standard of care.

■ To prevail on a defamation claim, the plaintiff must prove that the defendant (1) published a statement (2) that was defamatory about the plaintiff (3) while acting with negligence if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). A private individual may recover damages from a publisher for defamation upon a showing that: (1) the media defendant knew or should have known that the publication was false; and (2) the content of the publication would warn a reasonably prudent editor of its defamatory potential. *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819–20 (Tex.1976).

■ Negligent conduct is determined by asking "whether the defendant acted reasonably in checking the truth or falsity or defamatory character of the communication before publishing it." RESTATEMENT (SECOND) OF TORTS § 580B cmt. g (1977). The thoroughness of the check that a reasonable person would make before publishing a statement may vary with the play of the following factors: (1) the time element; (2) the nature of the interests the defendant was seeking to promote by publishing the communication; and (3) the extent of the damage to the plaintiff's reputation, or the injury to his sensibilities that would be produced if the communication proves to be false. *Id.* § 580B cmt. h. Additionally, comment g to section 580B of the restatement provides "[c]ustoms and practices within the profession are relevant in applying the negligence standard." *Id.* § 580B cmt. g. "The defendant, if a professional disseminator of news, such as a newspaper ... or an employee, such as a reporter, is held to the skill and experience normally possessed by members of that profession." *Id.* Evidence of custom, in this instance, "would normally come from an expert who has been shown to be qualified on the subject." *Id.*

■ Scripps attached the affidavit of its expert, Ralph Langer, in support of its traditional motion for summary judgment. A defendant seeking to negate the negligence element of a libel claim may do so through the affidavit of an interested witness, including an expert witness, so long as the affidavit enumerates the conduct illustrating that the standard of care was met, and directs the court to specific facts in the record in support of that conclusion. *Carabajal*, 961 S.W.2d at 631. Such facts should be laid out in such a way that they may be readily controverted by the non-movant. *Id.*

Langer testified that the actions of Stephanie Jordan, Scripps's reporter for the articles at issue, were within the standard of care for reporters operating under the same or similar circumstances because: (1) there are no generally accepted journalistic guidelines for covering a civil trial, nor are there industry standards for training

courthouse reporters; and (2) Jordan's training and preparation and the newspaper's policies and procedures for assigning reporters to cover the courthouse were reasonable and typical for a newspaper the size of the *Caller–Times*.

Langer based his conclusion that Scripps was not negligent in its reporting on the Ernst Trial and publishing the articles at issue on the following factors: (1) the trial was ongoing and the reports were daily, thus, the information was time-sensitive; (2) the court's file was available for review by the reporter for a limited time; (3) the size of the court's file (estimated to be five inches thick) precluded exhaustive review; (4) it was reasonable for the reporter to focus on key items (spelling of names and amount of damages) during this review; (5) attorneys involved in the case would not comment to the reporter; and (6) the reporter spent much of her available time observing witnesses and watching the trial.

In response, Dr. Belalcazar filed the affidavit of his expert, Goulden. Based on his experience working at two newspapers, one large and one small, he testified that there were generally accepted journalistic guidelines for covering a civil trial, and industry standards for training courthouse reporters. He concluded Jordan's lack of training, instruction, supervision, or guidance established a deviation from the standards of journalistic practice and care. His opinion was based on Jordan's testimony that she had been in court only once for a First Amendment trial in Chicago; she wanted to cover courts "because [she had] never done it before;" and her training included only an oral briefing by one editor and an explanation from her supervisors to look on the court doors for the dockets.

Scripps challenges Goulden's affidavit on the basis that it did not specifically address the factors of (1) time, (2) Scripps's interests, and (3) the extent of the damage

to Dr. Belalcazar's reputation. *See* RESTATEMENT (SECOND) OF TORTS, § 580B cmt. h (1977). However, while the restatement states that these are factors to be taken into consideration in applying the negligence standard, it does not state that these factors are mandatory or exclusive in determining negligence. *See id.* Moreover, customs and practices within the profession, including the skill and experience normally possessed by members of that profession, are relevant in applying the negligence standard. *See id.* § 580B cmt. g. We note Langer's affidavit did not address the extent of the damage to Dr. Belalcazar's reputation, or the injury to his sensibilities that would be produced if the communication proved to be false, which is another factor that may impact the thoroughness of the check that a reasonable person would make before publishing a statement. *Id.* § 580B cmt. h.

Dr. Belalcazar also provided the deposition testimony of Jordan as summary judgment evidence. Jordan testified she was a novice courthouse reporter when Scripps sent her to cover the Ernst trial. She had not previously covered a medical malpractice case. Jordan was told to look on the courtroom door for the court's docket. She was also told there was a difference between a criminal trial and a civil trial. Scripps encouraged Jordan to read the *Caller–Times's* past courthouse stories. Jordan was expected to learn on her own.

On March 7, 2000, Jordan saw the court's docket sheet on the door of the courtroom and read that the hospital was being sued. She surmised the trial involved claims of medical malpractice. While reviewing the court's file, during a brief break in the trial, to confirm spelling of names and the amount of damages pleaded, Jordan discovered the original petition, but did not examine the rest of the file. Jordan testified she was familiar with

the court's staff including the administrator, clerk and bailiff; but, she did not confirm the accuracy of her information with anyone at the courthouse. Jordan thought defense counsel represented both the Hospital and Dr. Belalcazar. She testified Scripps had no procedures in place for her to follow as far as how to verify the correctness of the conclusions she made regarding the *Ernst* lawsuit.

Further, Jordan testified her supervisor, Jim Suydam, did not question her research techniques, nor did he inquire into the accuracy of her information that Dr. Belalcazar had been sued for two million dollars. Suydam, however, testified he had "concerns" about Jordan's story when she presented it for his editing: concerns about whether Jordan correctly reported "who the parties were to the suit." Contradicting Jordan's testimony, Suydam stated that, after reading the story, he did ask Jordan if Dr. Belalcazar was a party to the suit. According to Suydam, Jordan assured him Dr. Belalcazar was "still named in the suit." Suydam stated he did not ask Jordan whether she had tested the accuracy of the information, but rather assumed Jordan had properly researched the issue.

Additionally, Jennifer S. DeSelms, a reporter and an editor with the *Caller-Times*, testified that she had not covered a civil trial. However, based on her experience of covering criminal trials and writing about civil filings, she would consider civil cases more difficult than criminal cases and, if she were to cover a civil case, would think it important to review the entire court file.

Finally, as set out above, Dr. Belalcazar produced summary judgment evidence related to the extent of the alleged damage to his reputation.

Construing all evidence in favor of Dr. Belalcazar, the non-movant, we conclude the evidence creates a genuine issue of material fact as to the negligence element of Dr. Belalcazar's cause of action. *See Foster*, 541 S.W.2d at 819–20; Restatement (Second) of Torts, § 580B cmts. g & h (1977). The trial court did not err in denying Scripps's traditional motion for summary judgment on this basis.

### E. Actual Malice

To recover punitive or presumed damages, a plaintiff is required to show that the defendant acted with actual malice in publishing the defamatory statements. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347–48, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Scripps asserts the evidence conclusively established the absence of actual malice.

A statement is made with actual malice when it is made with knowledge of its falsity or with reckless disregard as to whether it was false or not. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex.1994). Reckless disregard means that the defendant "entertained serious doubt as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). The standard is subjective: there must be sufficient evidence to permit the conclusion that the defendant actually had a "high degree of awareness of ... probable falsity." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Failure to investigate or verify information, without more, cannot establish actual malice. *See, e.g., Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 756 (Tex.1984); *Freedom Communications, Inc. v. Brand*, 907 S.W.2d 614, 622 (Tex. App.-Corpus Christi 1995, no writ).

Jordan testified she had no suspicion that any of the statements contained in the

articles were false. However, Suydam testified he had concerns regarding Dr. Belalcazar's involvement in the lawsuit. While Suydam's affidavit provided he had no reason to believe Dr. Belalcazar was not a defendant, his deposition testimony set out that he did have concerns.

Construing this evidence in favor of the non-movant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved, *Alvarez,* 967 S.W.2d at 874, we conclude a fact issue remains as to whether Scripps published the articles with reckless disregard as to whether they were true or not. *See Sullivan,* 376 U.S. at 279–80, 84 S.Ct. 710; *Hagler,* 884 S.W.2d at 772. The court did not err in denying this portion of Scripps's motion for summary judgment.

Because Scripps has failed to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on any ground set forth in its traditional summary judgment motion, we cannot reverse and render the court's order denying the motion. *Dracos,* 922 S.W.2d at 247. Scripps's first and second issues are overruled.

### IV. NO–EVIDENCE SUMMARY JUDGMENT

By its third issue, Scripps contends the trial court erred in denying its no-evidence motion for summary judgment because Dr. Belalcazar failed to present evidence to show how its failure to mention his dismissal rendered the gist of the articles false and defamatory. Scripps also asserts that Dr. Belalcazar failed to present evidence to show fault, either negligence or actual malice.

A no-evidence summary judgment asserts that there is no evidence of one or more essential elements of claims upon which the adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). A no-evidence summary judgment

is essentially a pre-trial directed verdict, to which the appellate courts apply a legal sufficiency standard of review. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.); *AMS Constr. Co., Inc. v. Warm Springs Rehab. Found., Inc.,* 94 S.W.3d 152, 159 (Tex.App.-Corpus Christi Nov.21, 2002, no pet.). "Like a directed verdict, then, the task of the appellate court is to determine whether the plaintiff has produced any evidence of probative force to raise fact issues on the material questions presented." *Jackson v. Fiesta Mart,* 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). A no-evidence summary judgment is properly granted only if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the challenged element of the claims. TEX.R. CIV. P. 166a(i); *Jackson,* 979 S.W.2d at 70–71. Moreover, as in a traditional summary judgment, in a no-evidence summary judgment, "all evidence is to be construed in favor of the non-movant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved." *Alvarez,* 967 S.W.2d at 874.

Based on the evidence set out above, evidence that was also filed by Dr. Belalcazar in response to Scripps's no-evidence motion, we conclude Dr. Belalcazar brought forth more than a scintilla of evidence to raise genuine issues of material fact as to the challenged elements of his defamation claim. *See* TEX.R. CIV. P. 166a(i); *Jackson,* 979 S.W.2d at 70–71. Scripps's third issue is overruled.

### V. CONCLUSION

The judgment of the trial court is affirmed.