NUMBER 13-05-00609-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






MPG PETROLEUM, INC., Appellant,


v.



CROSSTEX CCNG MARKETING, LTD.,

CROSSTEX ENERGY SERVICES, LP, AND 

CROSSTEX ENERGY SERVICES, GP, LLC Appellee.





On appeal from the 343rd District Court


of San Patricio County, Texas.






CONCURRING AND DISSENTING MEMORANDUM OPINION



Before Chief Justice Valdez, and Justices Yañez and Castillo


Concurring and Dissenting Memorandum Opinion 


by Justice Castillo


 Crosstex filed a traditional motion for summary judgment as to MPG's claim for
breach of contract, (1) and a no-evidence motion as to MPG's other claims, including
those for fraud and negligent misrepresentation. Both motions were granted by the
trial court. I concur with the majority's conclusion as to the breach of contract claim,
but for different reasons. Because I conclude the trial court erred in granting summary
judgment as to the negligent misrepresentation and fraud claims, I respectfully dissent
as to those claims.

I. Breach of Contract

 Crosstex alleges, essentially, that no contract was ever finalized because it and
MPG never agreed on the points of interconnection or delivery between MPG's well
and Crosstex's pipeline. (2) The parties initially executed a March 12, 2003, letter
agreement, by which MPG was to build a flow line from its well to Crosstex's Gregory
Gathering System. When it was determined that this was too expensive, the parties
renegotiated to provide for delivery into Crosstex's newly-acquired Ingleside-to-Refugio
8" pipeline that crossed MPG's leasehold. The letter agreement executed April 10,
2003, provides for the gas to be delivered at the "agreed upon points of
interconnection ('Points of Delivery') between the facilities of MPG and Crosstex." It
also provides that upon execution of the letter agreement, a "formal contract
incorporating the above terms" will be forwarded for execution. In issue is whether
the letter agreement is sufficiently clear to reflect a meeting of the minds as to the
points of delivery. 

A. Standard of Review

 The function of summary judgment is to eliminate patently unmeritorious claims
and defenses, not to deprive litigants of the right to a jury trial. City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes,
488 S.W.2d 64, 68 (Tex. 1972); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex.
App.-Corpus Christi 2003, no pet.). On appeal, the standard of review for the grant
of a motion for summary judgment is determined by whether the motion was brought
on no-evidence or traditional grounds. See Tex. R. Civ. P. 166a(i), (c); Alaniz, 105
S.W.3d at 344; Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.-Corpus
Christi 2003, no pet.) (op. on reh'g). 

 We review de novo a trial court's grant or denial of a traditional motion for
summary judgment. Alaniz, 105 S.W.3d at 345; Ortega, 97 S.W.3d at 771. The
movant bears the burden of showing both that no genuine issue of material fact exists,
and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Alaniz,
105 S.W.3d at 345. In deciding whether there is a genuine issue of material fact, we
take evidence favorable to the non-movant as true. Alaniz, 105 S.W.3d at 345. We
make all reasonable inferences and resolve all doubts in favor of the non-movant. Id.


B. Construction of A Written Agreement

 In construing a written agreement, the primary concern of this Court is to
ascertain the true intent of the parties as expressed in the instrument. Nat'l Union Fire
Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). We give terms their
plain, ordinary, and generally accepted meaning unless the contract shows the parties
used them in a technical or different sense. Heritage Res., Inc. v. NationsBank, 939
S.W.2d 118, 121 (Tex. 1996) (citing W. Reserve Life Ins. Co. v. Meadows, 261
S.W.2d 554, 557 (Tex. 1953)). If a contract is capable of more than one reasonable
interpretation, it is ambiguous; if, however, the contract can be given a certain or
definite legal meaning or interpretation, then it is not ambiguous and we will construe
it as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Cook
Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 131 (Tex.
App.-Houston [14th Dist.] 2000, pet. dism'd). 

 The parties' interpretation of a contract is parol evidence, and parol evidence of
intent is not admissible to create an ambiguity. Friendswood Dev. Co. v. McDade &
Co., 926 S.W.2d 280, 283 (Tex.1996); Zurich Am. Ins. Co. v. Hunt Petroleum (AEC),
Inc., 157 S.W.3d 462, 465 (Tex. App.-Houston [14th Dist.] 2004, no pet.). Only
after an agreement has been determined to be ambiguous can parol evidence be
considered to help ascertain the parties' true intent. McDade, 926 S.W.2d at 283;
Hunt, 157 SW.3d at 465; Mescalero Energy, Inc. v. Underwriters Indem. Gen.
Agency, Inc., 56 S.W.3d 313, 319 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). 
This Court may conclude a contract is ambiguous, even though the parties do not so
contend. Hunt, 157 S.W.3d at 465. When a contract is ambiguous, summary
judgment is improper because the interpretation of the contract becomes a fact issue. 
Id. (citing Coker, 650 S.W.2d at 394; Cook, 15 S.W.3d at 131). In determining
whether a contact is ambiguous, we look to the contract as a whole, in light of the
circumstances present when the contract was executed. Sun Oil Co. (Del.) v.
Madeley, 626 S.W.2d 726, 731 (Tex. 1981); Hunt, 157 S.W.3d at 465; Mescalero,
56 S.W.3d at 319; see Hewlett-Packard Co. v. Benchmark Elecs., Inc., 142 S.W.3d
554, 561 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) ("We construe a
contract from a utilitarian standpoint, bearing in mind the particular business activity
sought to be served."). The contract may be read in light of the surrounding
circumstances to determine whether an ambiguity exists. Sun Oil, 626 S.W.2d at
731-32; Cardwell v. Sicola-Cardwell, 978 S.W.2d 722, 727 (Tex. App.-Austin 1998,
pet. denied). We may "consider the commercial context of the transaction" to aid in
our interpretation. Intratex Gas Co. v. Puckett, 886 S.W.2d 274, 278 (Tex. App.-El
Paso 1994, no writ). This commercial context, however, is limited to the "ordinary
terms, customs and usages then in effect" in the industry. See id.; Atwood v.
Rodman, 355 S.W.2d 206, 216 (Tex. Civ. App.-El Paso 1962, writ ref'd n.r.e.). 

[E]ven though a written contract be unambiguous on its face, parol
evidence is admissible for the purpose of applying the contract to the
subject with which it deals . . . . It merely permits proof of the then
existing circumstances, in order to enable the court to apply the language
used therein to the facts as they then existed. It can do no more than
explain the doubtful relations of the instrument consistently with the
relations of the parties, the subject matter of the contract, and the other
incidents thereof. 


Murphy v. Dilworth, 151 S.W.2d 1004, 1005-06 (Tex. 1941) (citations omitted). 

 When a contract is silent, the question is not one of interpreting the language
but rather one of determining its effect. Hewlett-Packard, 142 S.W.3d at 562 (citing
Lidawi v. Progressive County Mut. Ins. Co., 112 S.W.3d 725, 731 (Tex.
App.-Houston [14th Dist.] 2003, no pet.)). A factfinder may not be called upon to
construe the legal effect of an agreement or to supply an essential term upon which
the parties did not mutually agree. Id. (citing Thompson v. CPN Partners, L.P., 23
S.W.3d 64, 71 (Tex. App.-Austin 2000, no pet.)). 

C. The Evidence

 Crosstex's motion for summary judgment attaches as evidence the March and
April letter agreements, and later communications dated between June and October
2003 relating to continuing efforts to identify the exact location for the points of
interconnection and metering equipment. (3) Crosstex contends that the points of
delivery or interconnection were never finalized, and that the contract therefore failed. 
The evidence reflects that costs varied considerably, depending upon the manner and
location of the connections, and were a factor in the communications. 

 MPG contends that the contract is sufficiently clear, and ensuing negotiations
were required only because Crosstex refused to honor its earlier agreement. MPG
further contends that "even if the point of delivery was uncertain from the face of the
April 10, 2003 agreement," a contract for the sale of natural gas is a contract for the
sale of goods falling under the Texas Business and Commerce Code. Tex. Bus. & Com.
Code Ann. § 2.107 (Vernon 1994). Section 2.308 is therefore applicable, and it
provides that, absent a specified place for delivery, delivery is at the seller's place of
business. Id. § 2.308. In this instance, MPG argues, that is "the point at where the
parties knew the gas was located." MPG contends that delivery from a well to a
pipeline located on the well's lease acreage is a"logical and consistent usage of trade,"
such that the place of delivery was "on the Brammer #3 leasehold," (4) and that this is
sufficient. 

 In its response to the motion for summary judgment, MPG tendered evidence
including the letter agreements, various communications dated after April 2003, and
the affidavit of MPG's Martha Graham to show that the parties had agreed that MPG
was to lay a flow line to the sale meters which would be located next to Crosstex's
Ingleside-to-Refugio line where it entered the Brammer #3 leasehold property; this
would be the location of the points of delivery. MPG also filed a supplemental
response, attaching deposition testimony of Crosstex's Scott Brown in support of this
contention. Brown testified that "[t]he meter would be at the Ingleside Refugio line;"
however, Brown also added that they "would tap into-tie into the Ingleside Refugio
line at some point that we hadn't determined yet." In its supplemental response, MPG
presented the same arguments as set forth in its appellate brief: that the points of
delivery were sufficiently certain from the face of the agreement and, even if they
were not, the understanding of the parties at the time of the agreement made the
points of delivery reasonably certain and legally sufficient. 

D. Analysis

 None of the evidence tendered in conjunction with the motion for summary
judgment on the breach of contract claim dates to a time prior to the letter
agreements. None of it shows that the specific locations of the points of
interconnection were already defined or were part of the circumstances present when
the contract was executed. Graham's affidavit states "[t]here were no negotiations
between MPG and Crosstex as to the preparation of the March 12, 2003 and the April
10, 2003 gas purchase and sale agreements." While this does not preclude the
assertion that the points of delivery were discussed and resolved, she does not make
that assertion. The agreement itself simply states delivery will be at the "agreed upon
points of interconnection." 

 While the parol evidence rule precludes admission of prior or contemporaneous
agreements which are inconsistent with the written agreement, see Hallmark v.
Port/Cooper-T. Smith Stevedoring Co., 907 S.W.2d 586, 590 (Tex. App.-Corpus
Christi 1995, no pet.), the parties' evidence here may properly be considered inasmuch
as it is neither prior nor contemporaneous, and it does not contradict any terms of the
agreement. See Robinson v. Texas Auto. Dealers Ass'n, 387 F.3d 416, 424 (5th Cir.
2004). (5)
 

 For an agreement to be enforceable, the parties must have agreed on its
essential terms. T.O. Stanley Boot Co., Inc. v. Bank of El Paso, 847 S.W.2d 218, 221
(Tex. 1992). Parties may agree upon some contractual terms, understanding them to
be an agreement, and leave other contract terms to be made later. Id.; Komet v.
Graves, 40 S.W.3d 596, 602 (Tex. App.-San Antonio 2001, no pet.); Hardin Constr.
Group, Inc. v. Strictly Painting, Inc., 945 S.W.2d 308, 312-13 (Tex. App.-San
Antonio 1997, orig. proceeding); Tex. Oil Co. v. Tenneco, Inc., 917 S.W.2d 826, 830
(Tex. App.-Houston [14th Dist.] 1994), rev'd on other grounds sub nom. Morgan
Stanley & Co., Inc. v. Tex. Oil Co., 958 S.W.2d 178 (Tex. 1997). It is only when an
essential term is left open for future negotiation that there is nothing more than an
unenforceable agreement to agree. T.O. Stanley Boot, 847 S.W.2d at 221; Tex. Oil
Co., 917 S.W.2d at 830; Komet, 40 S.W.3d at 602. Such an agreement is void as
a contract. Tex. Oil Co., 917 S.W.2d at 830. 

 Here, no party contends that identification of the points of delivery is not an
essential term. In fact, Graham's affidavit states that the "April 10, 2003 agreement,
prepared and agreed to by Crosstex contains all of the essential terms . . . ." MPG's
position has consistently been that the points of delivery are adequately described in
the agreement, and can be delineated by reference to the lease name, well number,
name of the pipeline, and the county in which all the "facilities" of the parties
interconnect. 

 The agreement does not clearly define the location of the points of delivery or
interconnection. Subsequent communications reflect disagreement as to their
location, and reinforce the position that the location was not readily determined from
the circumstances before the parties. Whether or not a subsequent agreement was
reached is not before us, since to so find would require us to conclude that this was
not an "essential term" of the contract. (6) Issues not expressly presented to the trial
court by written motion or response to the motion for summary judgment cannot sua
sponte be considered as grounds for reversal. Tex. R. Civ. P. 166(a); McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993). We may only
consider the record as it existed at the time of the motion. San Jacinto River Auth.
v. Duke, 783 S.W.2d 209, 210 (Tex. 1990) (citing Central Educ. Agency v. Burke,
711 S.W.2d 7, 9 (Tex. 1986)). 

 Accordingly, on the record before us, I agree we must uphold the summary
judgment granted in favor of Crosstex on the breach of contract claim. 

II. No-Evidence Motion for Summary Judgment

 Subsequent to the filing of the motion for summary judgment as to the breach
of contract claim, Crosstex filed a no-evidence motion addressing other claims,
including those for negligent misrepresentation and fraud. 

A. Standard of Review

 A no-evidence motion for summary judgment asserts that there is no evidence
of one or more essential elements of a claim on which the adverse party will bear the
burden of proof at trial. Tex. R. Civ. P. 166a(i); Alaniz, 105 S.W.3d at 344; Scripps
Tex. Newspapers, L.P. v. Belalcazar, 99 S.W.3d 829, 840 (Tex. App.-Corpus Christi
2003, pet. denied). This type of motion must specifically identify the elements of the
claim for which there is no evidence. Meru v. Huerta, 136 S.W.3d 383, 386 (Tex.
App.-Corpus Christi 2004, no pet.). Conclusory motions or general no-evidence
challenges to an opponent's case are not appropriate under this rule. Id. at 387. 

 We apply the same legal-sufficiency standard of review to a no-evidence
summary judgment as we apply to a directed verdict. Alaniz, 105 S.W.3d at 344;
Belalcazar, 99 S.W.3d at 840. "Like a directed verdict, then, the task of the appellate
court is to determine whether the plaintiff has produced any evidence of probative
force to raise fact issues on the material questions presented." Belalcazar, 99 S.W.3d
at 840 (quoting Jackson v. Fiesta Mart, 979 S.W.2d 68, 70 (Tex. App.-Austin 1998,
no pet.)). 

 The movant has no burden to attach any evidence to a no-evidence motion for
summary judgment. See Tex. R. Civ. P. 166a(i); Ortega, 97 S.W.3d at 772. The
non-movant bears the entire burden of producing evidence to defeat a no-evidence
motion for summary judgment. Alaniz, 105 S.W.3d at 344. To raise a genuine issue
of material fact, all that is required of the non-movant in responding to a no-evidence
motion for summary judgment is to produce a scintilla of probative evidence. Alaniz,
105 S.W.3d at 344; Ortega, 97 S.W.3d at 772. "Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere surmise or
suspicion' of a fact." Alaniz, 105 S.W.3d at 344; see Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla exists when the
evidence "rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions." Ortega, 97 S.W.3d at 772 (quoting Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 25 (Tex. 1994)); see Alaniz, 105 S.W.3d at 344. As in a traditional
summary judgment, in a no-evidence summary judgment, "all evidence is to be
construed in favor of the non-movant, to whom every reasonable inference is allowed
and on whose behalf all doubts are resolved." Belalcazar, 99 S.W.3d at 840.

B. The Motion and Evidence

 With respect to the negligent misrepresentation and fraud claims, Crosstex
contends there is no evidence of a material representation that Crosstex knew was
false when made, or that was made negligently, recklessly, or without knowledge of
its falsity. (7) Crosstex further argues there is no evidence of any justifiable reliance on
the misrepresentation, such that MPG would not have entered into the transaction had
the representation not been made. (8) On appeal, Crosstex treats the negligent
misrepresentation and fraud claims as one for fraudulent inducement and concludes
that since MPG cannot prove it entered into a binding agreement, the claims fail as a
matter of law. I disagree that the claims are so construed. (9) More relevantly, Crosstex
also contends that the evidence tendered by MPG is conclusory and therefore
incompetent, and constitutes no evidence. 

 Graham tendered a second affidavit in response to the no-evidence motion for
summary judgment. In it, she states that she participated in discussions leading up to
the execution of the April 2003 agreement. She delineates details of conversations
identifying location and costs of the interconnections. She states: 

In my conversations with Scott Brown, Defendants' representative, it
was represented that the location of the point of delivery under Exhibit
A-1 for gas produced from Plaintiff's Brammer #3 well was at the eastern
boundary of the Brammer #3 leasehold where Defendants' Ingleside to
Refugio 8" line enters the leasehold, immediately adjacent to the only
existing lease access road.


Graham goes on to state:


I would not have signed Exhibit A-01 if I had known the Defendants had
no intention of providing a connection to their pipeline on this acreage;
were going to immediately begin looking for an off-site location for a
point of connection . . . Defendants also made other misrepresentations,
including a representation that they had reached an agreement with
Elaine Klanika [the off-site neighbor] for a connection point on her
property. . . . Defendants never obtained any such agreement with Ms.
Klanika. 


Graham delineates damages sustained as a result of MPG's reliance on the
representation and the subsequent failure to make the interconnection, including the
payment of shut in royalties, recompletion of the well in an oil zone, loss of acreage
in the lease, and loss of sales of casinghead gas. 

 The affidavit sets out a specific location which was allegedly represented as the
point of interconnection, and which MPG understood to be the agreed-upon location. 
It identifies a specific statement or misrepresentation alleging that agreement for right-of-way to establish points of interconnection not on the Brammer #3 leasehold had
been reached with a neighboring landholder. (10) Graham's affidavit identifies allegedly
false statements by Crosstex representatives, and asserts that MPG would not have
entered into the agreement but for its reliance, to its detriment, on those
misrepresentations. (11) 

C. Analysis

1. Fraud

 With respect to the fraud claim, I agree that summary judgment may be based
on uncontroverted testimony evidence of an interested witness if it is clear, positive,
direct, otherwise credible and free from contradictions and inconsistencies, and could
have been controverted. Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex.
1997) (per curiam). Such affidavits may not be conclusory. Ryland Group, Inc. v.
Hood, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). The majority concludes that
Graham's testimony as to the existence of the representations, and her assertions that
MPG would not have entered into the agreement without the representation are merely
"subjective," not readily controverted, and therefore not competent summary judgment
evidence. Accordingly, the majority finds that MPG failed to tender competent
summary judgment evidence and upholds the no-evidence summary judgment in favor
of Crosstex on the fraud claim. I respectfully disagree. 

 First, summary judgment below was not based on Graham's affidavit. (12) In this
instance, summary judgment was based on the no-evidence motion tendered by
Crosstex. MPG bore the burden to bring forward at least a scintilla of evidence that
a misrepresentation had been made and relied upon. Alaniz, 105 S.W.3d at 344;
Ortega, 97 S.W.3d at 772. 

 Secondly, I would conclude that the Graham affidavit does more than simply
make conclusory statements, and in fact does provide a sufficient factual basis for its
conclusions. To constitute valid summary judgment evidence, an affidavit must do
more than offer mere legal conclusions or subjective opinions. See Randall v. Dallas
Power & Light Co., 752 S.W.2d 4, 5 (Tex. 1988) (per curiam); Brownlee v. Brownlee,
665 S.W.2d 111, 112 (Tex. 1984). An affidavit avoids being conclusory when it
provides underlying facts to support its legal conclusions. Rizkallah v. Conner, 952
S.W.2d 580, 587 (Tex. App.-Houston [1st Dist.] 1997, no writ). 

 The question of initial representations as to location of the interconnections is
addressed in detail, and is sufficient to constitute more than a scintilla of evidence. 
The affidavit also details alleged representations relating to the Klanika property and,
along with evidence of communications, clearly suggests that access to the Klanika
property was considered and discussed. The invoice forwarded July 30 includes an
itemized cost for right-of-way. These assertions are readily controvertible. With
respect to reliance, I agree that a party's subjective beliefs are no more than
conclusions and are not competent summary judgment evidence. Tex. Div.-Tranter v.
Carrozza, 876 S.W.2d 312, 314 (Tex. 1994) (per curiam). However, Graham's
affidavit does more than simply state that but for the representations, MPG would not
have entered into the agreement. Graham spells out in detail particular actions or
options available but foregone because MPG relied upon Crosstex, and the resulting
alleged damages are also identified with particularity. Accordingly, I consider this more
than "subjective" opinion or belief, and sufficient to constitute more than a scintilla of
evidence. 

2. Negligent Misrepresentation

 With respect to the negligent misrepresentation claim, the majority concludes
that the alleged misrepresentations relate not to existing facts but rather to promises
of future conduct and, as such, constitute no evidence of a false statement as to an
existing fact on which a party could justifiably rely thereon. (13) 

 The statement that Crosstex had already agreed to the location in accord with
the phone conversations preceding the April 2003 agreement is not a statement of
future intent. (14) 

 The majority and I have already determined that the parties did not express
agreement as to the points of delivery within the confines of the April 2003 letter
agreement, which instead used the reference to "agreed upon locations." However,
the language of the agreement also does not state that the locations are "to be agreed
upon." (15) Indeed, Graham contends in her affidavit that the points of delivery "[were]
represented" as being at a particular place. In such circumstances, I conclude this
alleged representation is not one relating to future conduct, but rather one relating to
an existing fact, and I conclude the affidavit is sufficiently specific to constitute more
than a scintilla of evidence and to raise a fact question on this point. (16) Moreover, the
alleged representations are sufficiently grounded in background fact and detail to do
more than offer mere legal conclusions or subjective opinions. See Randall, 752
S.W.2d at 5; Brownlee, 665 S.W.2d at 112. I further find the evidence sufficient to
suggest that MPG relied on the representations and consequently did not pursue
alternative gas purchasers during this time. 

III. Conclusion

 Accordingly, I concur with the majority opinion as to the motion for summary
judgment on the breach of contract claim. As for the negligent misrepresentation and
fraud claims, I conclude that sufficient competent summary judgment evidence was
raised, constituting more than a scintilla, as to representations of existing facts to
preclude a no-evidence summary judgment. I therefore respectfully dissent in part. 
I would reverse the trial court's order granting summary judgment as to these claims
and remand for further proceedings. 

 ERRLINDA CASTILLO

 Justice



Concurring and Dissenting Memorandum Opinion 

delivered and filed this 5th day of October, 2006.
1. Although Crosstex asserted in its first summary judgment motion that it was brought as both
a traditional and a no-evidence motion, I find nothing in the motion itself directed to no-evidence
grounds. See Tex. R. Civ. P. 166a(i). 
2. Crosstex also alleged a lack of consideration, and no injury from any alleged breach. 
3. Evidence was tendered to suggest that Crosstex considered the originally contemplated location
(which MPG's Martha Graham contends was agreed), adjacent to the existing lease-access road, to be
less than adequate because of recent rains and flooding.
4. MPG relies on Tex. Farm Bureau Cotton Ass'n v. Stovall, 253 S.W.1101 (Tex. 1923) for the
proposition that description of delivery points need not be absolutely certain, but only reasonably certain. 
The Stovall Court found the place of delivery was fixed with "reasonable certainty." Id. at 1106. 
However, the contract at issue described the place of delivery as "at the warehouse controlled by the
Association, or at the nearest public warehouse, if the Association controls no warehouse in that
immediate district; or by shipment as directed . . . ." Id. at 1103. Such a description is utterly lacking
here, and I would not extend Stovall to the circumstances of this case as suggested by MPG. 
5. The parol evidence rule similarly does not preclude enforcement of prior contemporaneous
agreements which are collateral to, not inconsistent with, and do not vary or contradict the express or
implied terms or obligations thereof. Hallmark v. Port/Cooper-T. Smith Stevedoring Co., 907 S.W.2d
586, 590 (Tex. App.-Corpus Christi 1995, no pet.) (citing Hubacek v. Ennis State Bank, 317 S.W.2d
30, 32 (Tex. 1958); Boy Scouts of Am. v. Terminal Sys., Inc., 790 S.W.2d 738, 745 (Tex. App.-Dallas
1990, writ denied)). It does provide that terms in "a writing intended by the parties as a final expression
of their agreement . . . may not be contradicted by evidence of any prior agreement or of a
contemporaneous oral agreement but may be explained or supplemented." Robinson v. Texas Auto.
Dealers Ass'n, 387 F.3d 416, 424 (5th Cir. 2004) (citing Tex. Bus. & Com. Code Ann. § 2.202 (Vernon
Supp. 2006)). In the appeal before us, no argument has been made of a separate collateral agreement
as to the location of the points of delivery. I note that Graham's second affidavit, filed with MPG's
response to the no-evidence motion for summary judgment on other claims, does reference
communications prior to the execution of the agreements, and is relevant to the negligent
misrepresentation and fraud claims. 

6. Section 2.308 provides that, absent a specified place for delivery, delivery is either at the
seller's place of business, or, "in a contract for sale of identified goods which to the knowledge of the
parties at the time of contracting are in some other place, that place is the place for their delivery." Tex.
Bus. & Com. Code Ann. § 2.308 (Vernon 1994). Section 2.202 of the code similarly provides that a
written agreement may be explained or supplemented by evidence of consistent additional terms, unless
the writing has been intended as a complete and exclusive statement of the terms of the agreement. 
Id.§ 2.202 (Vernon Supp. 2006). The section relating to the statute of frauds does not enumerate the
point of delivery as critical to enforcement of an agreement. Id. § 2.201 (Vernon 1994). The code
reflects that a written agreement is enforceable if the specified place of delivery may be readily
determined from the circumstances, or it is a non-essential term on which agreement may be reached
later. See T.O. Stanley Boot Co., Inc. v. Bank of El Paso, 847 S.W.2d at 221; Komet v. Graves, 40
S.W.3d 596, 602 (Tex. App.-San Antonio 2001, no pet.). 
7. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001); Ernst & Young v. Pac. Mut. Life
Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001) (setting out the elements of a fraud claim). 
8. Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n.24 (Tex. 2003) (citing Fed. Land
Bank Ass'n v. Sloane, 825 W.W.2d 439, 442 (Tex. 1991)), setting out the elements for a claim of
negligent misrepresentation; see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991
S.W.2d 787, 791 (Tex. 1999) 
9. "The tort of negligent misrepresentation frequently involves a defendant's statement that a
contract exists, upon which the plaintiff relies, only later to discover that the contract has been rejected
or never completed. Thus, negligent misrepresentation is a cause of action recognized in lieu of a
breach-of-contract claim, and is not usually available when a contract is in force between the parties." 
N.Y. Life Ins. Co. v. Miller, 114 S.W.3d 114, 124 (Tex. App.-Austin 2003, no pet.) (citing Sloane, 825
S.W.2d at 440-442; Airborne Freight Corp. v. E.R. Lee Enter., 847 S.W.2d 289, 295 (Tex. App.-El
Paso 1992, writ denied)). 
10. MPG's petition also includes detailed statements alleging the date of specific meetings,
Crosstex's proposal to locate the points of delivery offsite on adjoining property owned by Ms. Klanika
and to which MPG had no right of access, and that Crosstex then undertook on its own to gain that
right-of-way agreement. MPG asserts (1) that in repeated phone calls inquiring of status, Crosstex
assured MPG that agreement would be reached with Klanika and (2) that Crosstex, in a facsimile dated
July 30, 2003 (included as evidence), represented that it had obtained the Klanika right-of-way
agreement. Attached is an invoice for associated construction costs which includes an itemization for
right-of-way expenses. 
11. MPG, in Graham's affidavit, also expands on the actions foregone to its detriment, because
it relied on Crosstex, and the damages sustained as a result. 
12. Cf. Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex 1997) (per curiam). 
13. To constitute negligent misrepresentation, a false representation must have been made to an
existing fact, and not as a promise of future conduct. Miller, 114 S.W.3d at 124; Key v. Pierce, 8
S.W.3d 704, 709 (Tex. App.-Fort Worth 1999, pet. denied). 
14. By contrast, an argument not raised, that it "would in the future agree," clearly would
constitute a conditional promise of future conduct which could not sustain a claim for negligent
misrepresentation. Miller, 114 S.W.3d at 124; Mikish v. Exxon Corp., 979 S.W.2d 700, 702 (Tex.
App.-Houston [14th Dist.] 1998, pet. denied); Airborne Freight, 847 S.W.2d at 298. 
15. Having not been addressed in the April 2003 letter agreement, a contemporaneous accord as
to the locations of the points of delivery would not be inconsistent with or contradict the expressed
terms of the agreement. See Hallmark, 907 S.W.2d at 590. 
16. I similarly conclude that more than a scintilla of evidence, including affidavit testimony and
documentary evidence, was tendered to suggest that Crosstex had represented that it had reached an
agreement with Klanika as to right of way. This alleged statement is similarly not one of future conduct
but of an existing fact. I recognize that any such representation was made later in time and could not
have been relied upon when entering into the contract; it could, however, have been a factor in
continuing reliance and any delay that aggravated damages sustained, if any. See Miller, 114 S.W.3d
at 124.