In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00432-CV**
_____

**USA TODAY A/K/A GANNETT CO., INC., GANNETT PUBLISHING SERVICES, LLC, AND GANNETT SATELLITE INFORMATION NETWORK, LLC, Appellants**

**V.**

**RYAN, LLC, Appellee**

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 22-06-07554-CV**
_____

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, Appellants USA Today a/k/a Gannett Company, Inc., Gannett Publishing Services, LLC, and Gannett Satellite Information Network, LLC (collectively "USA Today," "Appellants," or "Defendants") appeal the trial court's order denying their Texas Citizen's Participation Act ("TCPA") motion to dismiss a claim for defamation filed by Appellee Ryan, LLC ("Ryan," "Appellee," or "Plaintiff"). *See* Tex. Civ. Prac. &

Rem. Code Ann. §§ 27.001-27.011 (the TCPA), 51.014(a)(12) (authorizing an interlocutory appeal of an order denying a motion to dismiss filed under the TCPA section 27.003).[1] As explained below, we affirm.

Background

This dispute concerns articles that USA Today published in print and in other media that Ryan alleges "falsely accused Ryan [] of unlawful and unethical business practices in its efforts to secure legitimate tax savings for its clients." Ryan is a Texas-based tax services provider. The USA Today Defendants are companies engaged in the news media business, including the ownership and publication of a national newspaper, *USA Today*, and various local newspapers, including *The Arizona Republic*. We have previously described the parties and this litigation in two other matters challenging trial court rulings, one an interlocutory appeal pertaining to personal jurisdiction as to certain claims and the other a mandamus regarding venue. *See USA Today v. Ryan, LLC*, No. 09-22-00322-CV, 2023 Tex. App. LEXIS 9361 (Tex. App.—Beaumont Dec. 14. 2023, pet. filed) (mem. op.) (finding no specific personal jurisdiction over USA Today as to Ryan's breach of contract claim); *In re USA Today*, No. 09-23-00140-CV, 2023 Tex. App. LEXIS 7963 (Tex.

---

[1] The TCPA applies to "a legal action [that] is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

App.—Beaumont Oct. 19, 2023, orig. proceeding) (mem. op.) (finding that when a limited liability company sues for defamation, the county in which the plaintiff resided at the time of the accrual of the cause of action is the county where the limited liability company maintains its principal office, and because the plaintiff did not file its suit for defamation in a county of proper venue, the court conditionally granted mandamus relief).

Ryan's Petition

In June of 2022, Ryan filed its Original Petition against Defendants, and in August of 2022, Ryan filed its First Amended Petition.[2] Ryan asserted several claims against Defendants, however, the only claim at issue in this interlocutory appeal is Ryan's defamation claim.

In its petition, Ryan states that USA Today contracted for Ryan's services, obtained more than $2 million in tax savings, and failed to pay fees owed to Ryan. Then USA published articles that criticized Ryan and described its work as unlawful and "hid the fact" that USA Today had been a client of Ryan's. According to the petition, the articles "falsely claimed that Ryan [] was somehow participating in

_____

[2] Ryan's First Amended Petition was the live pleading at the time the trial court heard USA Today's motion to dismiss, and we refer to it as "the petition" herein. In this opinion, we limit our discussion of the factual allegations to the defamation claim because that is the claim at issue in the TCPA motion to dismiss.

business practices that were criminal, corrupt and unethical[]" while concealing or not disclosing the fact that USA Today was a client of Ryan's.

According to Ryan, USA Today published defamatory "articles, podcasts, tweets and other false communications about Ryan" across the United States and to a "global internet audience[,]" and the publications contain "demonstrably false assertions of fact or create[] a defamatory impression by misrepresenting material facts, omitting material facts, and juxtaposing facts in a misleading way." Ryan alleged that some of the allegedly defamatory communications pertained to Ryan's work on behalf of a client to seek a tax refund for dyed diesel fuel that was used in mining and processing machinery in Arizona.

The petition states that dyed diesel fuel is used by Ryan's client, Carter Oil Company, as fuel in mining and processing machinery. According to the petition, after doing research, Ryan concluded that the dyed diesel fuel sold by his client to others who incorporated the fuel into the machinery used in mining operations should be exempt from taxation under Arizona statutory law, and Ryan assisted its client, Carter Oil Company, in applying for a refund, but Arizona's Department of Revenue denied the request for a refund in 2014. Ryan's client, Carter Oil Company, subsequently sued the department in Tax Court in 2016 and won. After winning on the issue and entering into a payment plan for receiving refund payments over a

4

period of years, Ryan retained three former state employees as outside consultants to work for Ryan.

According to the petition, USA Today falsely misrepresented Ryan's work on the Arizona dyed diesel fuel issue: (1) by falsely suggesting that Ryan's work was done in secret; (2) by falsely suggesting that Ryan asked the refund payments to be made over a period of years in order to avoid the scrutiny of lawmakers; (3) by falsely suggesting that there was no basis for Ryan's request for the refunds and that the request was contrary to longstanding law; (4) by not reporting (or "concealing") that Ryan had prevailed in Tax Court on its refund request; (5) by misleading readers into thinking that the Governor had fired Woodruff and Nülle for opposing Ryan's refund request rather than for opposing the Governor's position on school funding; (6) by falsely accusing Ryan of breaking Arizona's conflict of interest law by hiring consultants who previously worked for Governor Ducey (Mike Liburdi, Danny Seiden, and Kirk Adams), although those individuals had never worked in the Department of Revenue and were never previously involved in the refund request matter, and the conflict of interest law applies only to individuals and not to companies like Ryan; and (7) by falsely claiming there was an FBI investigation of Ryan by the "public corruption unit." The petition further alleges that USA Today

also "falsely accuse[d] Ryan of corruption and unethical business practices" by misrepresenting Ryan's work in a separate matter in North Dakota.[3]

The petition alleges that USA Today falsely misrepresented Ryan's work on the North Dakota equipment refund issue: (1) by falsely claiming that Ryan had filed "questionable" and "frivolous" refund claims that lacked documentation even though the Tax Court's ruling in favor of Ryan's client was publicly available when USA Today published its article; (2) by falsely claiming that Ryan had "issue shopped" various North Dakota tax department employees to obtain inconsistent or ambiguous responses even though a North Dakota senior tax official had apologized to Ryan after an official had mistakenly blamed Ryan for another company's "issue shopping" and the apology had occurred before USA Today's misleading article; and (3) by failing to correct the record when Ryan notified USA Today of the alleged errors.

---

[3] According to an order in the appellate record, the North Dakota suit related to a request by Ryan's client Equinor Energy LP (f/k/a Statoil Oil and Gas LP) seeking a refund of sales and use tax on separators it purchased for use in gas gathering and processing. The petition alleges that Ryan believed that its client was entitled to a tax refund because separators used in gas gathering and gas compression systems should have been exempt from North Dakota sales and use tax. Initially the tax commissioner denied Equinor's refund request, after which the Tax Court ruled in favor of Ryan's client, Equinor, and in a publicly-issued ruling the Tax Court concluded that it was the tax commissioner's position which was not supported by law and that Ryan's client was entitled to the refund.

The petition asserts that the alleged defamatory statements or publications are defamatory individually and as a whole because they "create a defamatory impression by misrepresenting material facts, omitting material facts, and juxtaposing facts in a misleading way[,]" and a person of ordinary intelligence would perceive USA Today to be "accusing Ryan of serious criminal misconduct, corruption, and unethical business practices." Ryan identified nine statements that USA published that were allegedly defamatory communications about Ryan:

> a) A July 14, 2021 series by Craig Harris, Michael Braga, and Javier Zarracina, "Untangling Arizona Gov. Ducey's complex network of interests," which was published on usatoday.com and in print editions of *USA Today*, states that:
>
> > "Here's a map of the main players involved in this failed ***behind the scenes*** power play and what each had at stake:"



> > "The entire basis for Ryan's [***dyed diesel refund***] ***claim was novel***."
> >
> > "But in mid-2016, the tax officials had rejected the whole idea of the [dyed diesel] tax break. So Ryan LLC and its founder, G. Brint Ryan, had an Arizona problem. To turn that problem into a big win, they would need to beat the state Revenue Department. And they would need the help of one of the most powerful men in Arizona . . ."

7

Ryan "needed the governor's help persuading the Department of Revenue to abandon [the dyed diesel] legal action . . . and to [issue the] refund."

". . . changing the rules to issue [*the dyed diesel refund*] *was* . . . *contrary to long-standing tax law*."

"Nülle knew that state conflict-of-interest laws bar government employees from trying to influence their former employers for a year. Yet, here Liburdi and Seiden were representing the interests of [Ryan] before a state agency that they used to oversee."

During settlement negotiations, Ryan requested the "payment of many millions of dollars over three years, rather than all at once, Nulle told The Republic. Doing it this way, as Ryan wanted, would avoid scrutiny from lawmakers or from the independent Joint Legislative Budget Committee, which likely would raise questions as to why such a large lump sum was flowing out of Revenue's coffers," Nulle said.

b) A July 19, 2021 promotional tweet posted by *USA Today* employee Craig Harris to his official *USA Today* Twitter account @CraigHarrisUSAT states:

"ICYMI: These two veteran public servants stopped a $100 million tax giveaway to @GBrintRyan, a campaign donor to Gov. @dougducey. Their reward? @dougducey fired them."

c) On July 28, 2021, Craig Harris appeared as an employee of *USA Today* on the Gaggle podcast, which is widely available online and through podcasting apps, and made the following statements:

Ryan pushed for the dyed diesel fuel refund request with "no public hearings, no openness at all, trying to get the department of revenue to sign over a hundred million dollars to all of these clients for Ryan LLC."

Ryan retained three former public officials even though "they're supposed to wait a year, according to the state's conflict of interest laws and a cooling off period laws."

8

d) An August 31, 2021 article by Craig Harris, "FBI examining $100M tax refund push by Arizona Gov. Ducey staffers after Arizona Republic/*USA Today* investigation," which was published on usatoday.com and in print copies of *USA Today*, stated that:

> "The FBI's Public Corruption unit is investigating efforts by Arizona Gov. Doug Ducey's past and current staffers—including one who is now a federal judge—to push for a closed-door deal to issue tax refunds worth as much as $100 million to aid one of Ducey's campaign supporters . . . The companies that stood to benefit were represented by Texas tax firm Ryan LLC, founded by Ducey supporter G. Brint Ryan. The top three deputies in Ducey's administration left their government jobs and went to work for Ryan to push for the tax refund."

> "Ryan had pushed Revenue to settle the [dyed diesel fuel refund request] case and pay out the money, perhaps spread out over multiple years to draw less scrutiny."

> "Ryan's firm hired ex-Chief of Staff Kirk Adams, now a political consultant; ex-General Counsel Mike Liburdi, now a federal judge appointed by Trump; and former Deputy Chief of Staff Danny Seiden, now CEO of the Arizona Chamber of Commerce & Industry. All began working for Ryan within months of leaving Ducey's office despite a state law that requires a one-year cooling-off period for public employees before trying to influence their former employers."

e) The following August 31, 2021 promotional tweets posted by *USA Today* employee Craig Harris to his official *USA Today* Twitter account @CraigHarrisUSAT:

> "EXCLUSIVE: @FBI Public Corruption Unit investigating Gov. @dougducey administration after current and former staff, including a federal judge, pressured AZDOR to give away $100M to clients of @GBrintRyan, a big-time @GOP and @dougducey donor."

"Here's the story on the background of *Nülle and* his former boss *Carlton Woodruff, both of whom @dougducey fired after they were against the $100 million tax giveaway*."

f) On September 1, 2021, Craig Harris appeared as an employee of *USA Today* on the Arizona Horizon podcast, which is widely available online and through podcasting apps, and made the following statements:

> "Ryan LLC hired three high-level staffers of the Governor. . . and within months of leaving the Governor's office they were lobbying and putting pressure on the Department of Revenue, an agency that they managed and overseen to give this $100 million sales tax refund back to these businesses here in Arizona."

> "There wasn't any" basis for Ryan's dyed diesel refund request.

g) A December 30, 2021 promotional tweet posted by *USA Today* employee Craig Harris to his official *USA Today* Twitter account @CraigHarrisUSAT, stated:

> *USA Today*'s July series "showed a coordinated effort by the @dougducey administration to try to secretly give away $100 million in tax refunds to donors and friends of the governor? https://azcentral.com/in-depth/news/local/arizona-investigations/2021/07/14/how-doug-ducey-top-deputies-pushed-deal-would-have-cost-arizona-taxpayers-100-million/7622030002/."

h) A January 10, 2022 article by Craig Harris, "Firm helps companies get rich with 'questionable' tax refunds, tactics that exhaust officials," which was published on usatoday.com and in print copies of *USA Today* on January 12, 2022 under the headline "Tax officials question firm's grueling tactics," stated that:

> Ryan retained people who were "supposed to wait a year, according to the state's conflict of interest laws and a cooling off period law."

10

Ryan pushed for the dyed diesel request in Arizona "behind the scenes," "not in the public," and "with no public hearings or openness at all."

Ryan "Hired three former high-ranking officials in Arizona Gov. Doug Ducey's administration a few months after they left office to pressure the state's department of revenue to give $100 million in refunds to mining clients of Ryan. The company hired the three ex-public employees, including one whom Trump appointed as a federal judge after working for Ryan, even though Arizona has a one-year cooling-off period before ex-employees can lobby the state . . . The controversy resulted in an FBI investigation last spring."

"Ryan LLC unsuccessfully 'issue shopped' by contacting different tax department employees in an attempt to find an inconsistent or ambiguous answer to their questions."

Ryan files "questionable refund claims" . . . "For example, McMerty said Ryan tried to claim that oil well production equipment should receive an exemption for gas equipment, which is intended to incentivize the buildout of gas transportation infrastructure. McMerty said the equipment is used in oil production, separating oil, water and gas—not gas processing."

i) The following January 10, 2022 promotional tweets posted by *USA Today* employee Craig Harris to his official *USA Today* Twitter account @CraigHarrisUSAT:

"If this firm, Ryan LLC, sounds familiar, well it tried to quietly claw back $100 million in tax refunds in Arizona through the help of Gov. @dougducey and current and ex-staffers like @dbseiden, @KirkAdams and current federal judge Mike Liburdi."

". . . Gov. @dougducey tried to help the firm [Ryan] quietly claw back $100 million of Arizona tax dollars to help friends of the governor. #AZUnstoppable."

11

"And when two public servants at the Arizona Dept. of Revenue tried to stand up to @dougducey and stop the $100 million in tax refunds to clients of [Ryan] they got fired."

Ryan alleged that USA Today's allegedly false accusations—which were also republished by other media outlets and by USA Today itself—caused Ryan to suffer substantial financial and reputational harm. According to Ryan, it has lost current and prospective customers due to the complained-of publications, its employee recruiting has been adversely affected, and it has made significant expenditures to mitigate business and reputational harm. Ryan also alleged it had suffered consequential damages in the form of lost profits.

Attached to the petition were copies of the following documents: a September 1, 2021 Arizona Horizon article titled "The FBI is investigating Governor Doug Ducey and staff members regarding a major tax refund"; July 14, 2021 *The Arizona Republic* and *USA Today* articles titled "Untangling Arizona Gov. Doug Ducey's complex network of interests[,]" "He made a fortune winning tax refunds. He needed help from Arizona's most powerful leader[,]" "Arizona's governor had political aspirations. He also had a pipeline to a big GOP supporter[,]" "They were Gov. Doug Ducey's top officials. Then they went after a huge tax refund[,]" "She was the governor's deputy chief of staff. The tax deal she pushed would benefit her father's

mining firm[,]"[4] and "They stood up against a tax refund that would have cost Arizonans. It cost them their jobs[,]"; a January 10, 2022 *USA Today* article titled "Firm helps companies get rich with 'questionable' tax refunds, tactics that exhaust officials"; a November 2, 2021 letter from counsel for Ryan to counsel for USA Today outlining and objecting to "false accusations of corruption and deceit [that] are defamatory *per se*" and demanding a correction and public apology; a January 28, 2022 letter from counsel for Ryan to counsel for USA Today outlining and objecting to additional false and libelous claims and demanding a retraction; and an August 31, 2021 *The Arizona Republic* and *USA Today* article titled "FBI examining $100M tax refund push by Arizona Gov. Ducey staffers after Arizona Republic/USA TODAY investigation[.]"[5]

USA Today's Answer

Defendants filed an Original Answer Subject to Special Appearance and Motion to Transfer Venue, which asserted a general denial. Defendants also asserted affirmative defenses, including—they did not publish any false statements about Ryan, and any statements at issue are true or substantially true; the statements at

---

[4] This article refers to Gretchen Conger, former deputy chief of staff to Governor Ducey, whose father was an executive of Freeport McMoRan, an international mining firm.

[5] Other documents were attached in support of Ryan's contract claim, which we do not review here because they are not related to the denial of USA Today's TCPA motion to dismiss, which is the subject of this appeal. *See* Tex. R. App. P. 47.1.

issue are privileged; the statements at issue were made without malice, which Ryan must prove because Ryan is a public figure; the statements at issue are expressions of opinion that are not actionable in defamation.

USA Today's Motion to Dismiss Plaintiff's Defamation Claims

USA Today filed a motion to dismiss pursuant to the TCPA, arguing that Ryan's defamation claims should be dismissed because (1) the alleged defamatory statements are based on or are in response to USA Today's exercise of the right of free speech, (2) Ryan cannot establish by clear and specific evidence a prima facie case for its defamation claims, (3) or in the alternative, USA Today has the affirmative defenses of (a) the statements at issue are true or substantially true, (b) the statements at issue are "fair, true and impartial accounts of judicial, executive, or other official proceedings to administer the law[,]" (c) the statements at issue are constitutionally protected opinion, and (d) the statements at issue are privileged commentary on acts of public officials and matters of public concern.[6]

USA Today contends that Ryan cannot prove that USA Today made defamatory statements of fact because Ryan's pleading relies on misrepresentations of the statements at issue, taken out of context. USA Today argues that the Defendants never accused Ryan of illegal or unethical conduct and only reported

---

[6] Citing Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(b)-(d), 73.002(b)(1), (2), 73.005(a)-(b).

14

about what other people said who questioned Ryan's "tactics and the work of its lobbyists[,]" and that several of the statements at issue are not about Ryan at all—rather they are about Governor Ducey or his former staffers. The motion also argues that the statutory "fair reporting" privilege protects the media's accurate reporting, and that Ryan must show that USA Today falsely reported its sources' allegations, which Ryan cannot do.[7]

In its motion to dismiss, USA Today did not take a position on whether Ryan is a public figure for purposes of determining the degree of fault required (actual malice or ordinary negligence). USA requests attorney's fees and sanctions against Ryan. Attached to USA Today's motion is the Declaration of Craig Harris, a journalist for *USA Today* and formerly for *The Arizona Republic*.[8] Attached to the Declaration are copies of several articles, tweets, and a transcript of Harris's comments on "The Gaggle" podcast. In his Declaration, Harris attests that "[a]ll of the statements attributed to Woodruff, Nülle, and all other third parties in the publications cited [] are accurately reported."

---

[7] Citing Tex. Civ. Prac. & Rem. Code Ann. § 73.005(b) (In an action brought against a newspaper, the defense of truth applies to "an accurate reporting of allegations made by a third party regarding a matter of public concern.").

[8] USA Today's motion explains that it publishes *The Arizona Republic*, which it describes as "the state's largest newspaper."

<u>Ryan's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Defamation Claims</u>

In its Response, Ryan argued, "[a]t the heart of [USA Today's] false reporting is the false implication that Ryan's core commitment—to ensuring that its clients pay only the taxes they owe, and not a penny more—is somehow improper, unlawful or contrary to the public interest[]" and that in pursuing tax savings for its clients, Ryan was "somehow participating in business practices that were criminal, corrupt and unethical." Ryan argues that the gist of USA Today's reporting about Ryan is defamatory. According to Ryan, the nine statements at issue are either false standing alone, or when viewed together, create "a substantially false and defamatory impression of Ryan[.]"

Ryan contends that it is not a public figure, and the negligence standard of fault should apply. That said, according to Ryan, even under the actual malice standard, Ryan has presented prima facie proof of its claim because USA Today's "selective omission of facts, or juxtaposition of true facts in certain contexts, was designed to create a false impression about the nature of Ryan's business activities, caused harm to Ryan's reputation[,] and implied Ryan engaged in criminal misconduct." Ryan argues that because it has offered clear and specific evidence of a prima facie claim for defamation, the burden shifted to USA Today on its affirmative defenses, and that numerous of the statements at issue were not attributed to third persons, so they are not shielded by the third-party allegations privilege. In

16

addition, Ryan argues that the statements made on podcasts are slander under Texas law and are not covered by the affirmative defenses USA Today asserts. Ryan further argues that USA Today has not met its burden to prove that it is entitled to judgment as a matter of law on its affirmative defenses.

According to Ryan, USA Today knew or should have known its reporting on the Arizona dyed diesel fuel refund was false because: (1) Ryan's clients publicly sued the Department of Revenue in Tax Court and not "behind the scenes" as reported; (2) the initial proposal to make the refund payments over three years was initially offered to Ryan's client by the Department of Revenue and not by Ryan, as USA Today reported; (3) reporter Harris's open records request related to the dyed diesel refund included citations to Arizona case law, so that establishes USA Today knew or should have known that it was false for USA Today to report that Ryan's efforts were "contrary to long-standing tax law[]"; (4) Woodruff and Nülle—aides to Governor Ducey—were fired 24 hours after they contradicted the Governor on the school funding proposition, which Woodruff publicly acknowledged in an interview with USA Today; (5) reporter Harris knew that the former State employees hired by Ryan had never been employed by the Department of Revenue nor had they worked on the dyed diesel fuel issue before Ryan retained them, and Harris should have known that the "cooling off period" statute did not apply under these circumstances, so Ryan could have no culpability under the statute; and (6) there is

17

no factual basis for USA Today's reporting that there was an FBI investigation of Ryan, which USA Today did not retract despite Ryan asking for a retraction.

As to the North Dakota activities and reporting, Ryan argues that USA Today knew or should have known its reporting was false because: (1) Ryan's legal argument was documented, and the North Dakota Tax Court found it was the tax commissioner's position which was meritless; (2) Ryan informed USA Today that a senior North Dakota tax official had apologized for blaming Ryan for "issue shopping" which was something that another company had actually used, yet USA Today did not include the apology in its subsequent reporting and instead misrepresented Ryan's work and failed to retract the misrepresentation; and (3) even though the North Dakota Court had ruled in Ryan's favor, USA Today continued to make false allegations about Ryan's work in Arizona when it published articles about Ryan's work in North Dakota, leaving readers with a "substantially false impression[.]"

Ryan asserts that it suffered harm to its business and reputation because it lost business opportunities and customers—specifically, Ryan alleged it lost the account of Deloitte LLP, who terminated its working relationship with Ryan and cited the USA Today's reporting about Ryan as the primary reason for terminating the relationship. Ryan also alleges it has spent hundreds of thousands of dollars in repairing the harm to its reputation and business.

18

<u>USA Today's Objections to the Chronis Affidavit Filed in Support of Plaintiff's Response to TCPA Motion</u>

The day before the hearing on the motion to dismiss, USA Today filed objections to the Chronis[9] Affidavit, which was attached to Ryan's response. According to USA Today, certain statements in Chronis's affidavit were conclusory and an improper legal conclusion, not based on personal knowledge, or inadmissible hearsay. USA Today also objected to Chronis describing the meaning of the challenged, allegedly defamatory statements, arguing that the affidavit contained "improper meaning testimony" because defamation is tested by how the ordinary reader would understand a statement and not what Chronis says it means. USA Today also filed a reply in support of its motion to dismiss, generally arguing that the statements at issue are not false, and therefore, not defamatory.

After a hearing on the motion to dismiss, the trial court signed an Order on Motion to Dismiss and Ancillary Items Related Thereto. The trial court sustained some of USA Today's objections to the Chronis Affidavit but overruled most of the objections. In some instances, the court wrote that it did not regard the objected-to statements as "evidence" but rather regarded it as "a heading related to the topics to follow." The trial court denied USA Today's motion to dismiss, stating, "The Court finds that Defendants neither established their affirmative defenses nor established

_____

[9] Damon Chronis is the president of Ryan, LLC.

19

that they were entitled to judgment as a matter of law. In contrast, the Court finds that Plaintiff presented clear and specific evidence in support of Plaintiff's defamation claim." Defendants timely filed a Notice of Interlocutory Appeal.

## Issues On Appeal

Appellants raise four issues on appeal. In the first issue, they argue that the trial court erred in denying their motion to dismiss under the TCPA. In the second issue, Appellants argue that Ryan failed to satisfy its burden under the TCPA to submit clear and specific evidence to support each essential element of its defamation claims. In the third issue, Appellants argue that they are entitled to judgment as a matter of law, including on their affirmative defenses. And in the fourth issue, Appellants argue that the trial court abused its discretion by failing to exclude evidence comprised of conclusory statements, speculation, and inadmissible hearsay.

## Admission of Evidence

We address Appellants' fourth issue first, which concerns the admission of evidence. Evidentiary rulings are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (citing *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam)). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Id.* (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35,

43 (Tex. 1998)). "The trial court has extensive discretion in evidentiary rulings, and we will uphold decisions within the zone of reasonable disagreement." *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018).

"Relevant evidence is presumed to be admissible." *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018) (citing Tex. R. Evid. 402). Even if the trial court abused its discretion in ruling on the admission or exclusion of certain evidence, reversal is only appropriate if the error was harmful—that is, it probably resulted in an improper judgment. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *see also* Tex. R. App. P. 44.1, 61.1. We will uphold a trial court's ruling on the admission of evidence if there is any legitimate basis for the ruling. *See Malone*, 972 S.W.2d at 43 ("An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling."). A successful challenge to evidentiary rulings usually requires the complaining party to show that admission of the challenged evidence probably resulted in an improper outcome— usually by showing that the court's ruling turns on the particular evidence excluded or admitted. *U-Haul Int'l, Inc.*, 380 S.W.3d at 132 (citing Tex. R. App. P. 44.1, 61.1); *Alvarado*, 897 S.W.2d at 753-54.

Section 27.006(a) of the Civil Practice and Remedies Code provides:

In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings,

21

evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based.

Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see also* Tex. R. Civ. P. 166a(c); *Montano v. Cronan*, No. 09-20-00232-CV, 2021 Tex. App. LEXIS 5654, at *20 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.). Therefore, we look to the standards in Rule 166a.[10]

On December 15, 2022—the day before the hearing on the motion to dismiss—USA Today filed objections to the affidavit of Damon Chronis (Ryan's president), which was attached to Ryan's response to the motion to dismiss and to which numerous exhibits were attached. Defendants raised 31 objections to certain sections of the Chronis affidavit, and in some instances, objected to multiple sentences within a section. Defendants objected to some statements in the Chronis affidavit as conclusory, improper legal conclusions, improper meaning testimony,[11]

---

[10] The Legislature expressly adopted the Rule 166a timeliness requirements in the 2019 amendments to the TCPA. *See Atlas Survival Shelters, LLC v. Scott*, No. 12-20-00054-CV, 2020 Tex. App. LEXIS 9170, at **10-11 (Tex. App.—Tyler Nov. 18, 2020, no pet.) (mem. op.) (citing Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 12, 2019 Tex. Gen. Laws 960, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a))).

[11] USA Today objected to certain assertions in the Chronis affidavit as "improper meaning testimony" and explained that, in a claim for defamation, the meaning of a publication is determined by how it would be understood by the ordinary reader and not by Chronis (or any other specific individual) and what he says it means.

22

not based on the affiant's personal knowledge, lacking a foundation, containing inadmissible hearsay, and based on improper lay opinion.

The trial court's order denying USA Today's motion to dismiss reflects that the trial court considered USA Today's objections to Ryan's evidence, and the order includes rulings on USA Today's objections. The trial court sustained eight of USA Today's objections and overruled the rest. In some instances, in overruling an objection, the trial court wrote, "the Court notes that it does not accept this portion of the affidavit as evidence, but, instead, views it as a heading related to the topics to follow." In one instance, the trial court overruled the objection and wrote, "the Court treats the statement as an operative fact[,]" which referred to a sentence in the Chronis affidavit that reads, "Ryan, through a letter from its counsel to Gannett dated January 28, 2022, [] expressly told Gannett that Ryan has never been contacted by the FBI in connection with an investigation and was completely unaware of the existence of any investigation into any of Ryan's activities in Arizona." Otherwise, the trial court overruled USA Today's objections without explanation.

On appeal, USA Today argues that the trial court abused its discretion in overruling the bulk of its objections and that "[b]ecause Ryan relied on this incompetent evidence to support its Step 2 showing, the trial court's refusal to exclude it was harmful error and resulted in the rendition of its erroneous judgment." Appellee argues that Appellants' argument is "only a vague and conclusory

analysis" and that Appellants cannot show that the admission of the challenged evidence probably caused the rendition of an improper judgment.

USA Today's argument about why the trial court's admission of the complained-of-evidence outlined in its fourth issue harmed doesn't explain how admitting the evidence led the trial court to render an improper judgment. It's entire argument on harm is that "the trial court's refusal to exclude [the challenged statements in the Chronis affidavit] was harmful error and resulted in the rendition of its erroneous judgment." This argument is insufficient to comply with the requirements that apply to appellate briefs because it fails to "apply the facts to the cited law to show how the trial court committed error." *See Golden v. Milstead Towing and Storage*, Nos. 09-21-00043-CV, 09-21-00044-CV, 09-21-00045-CV, 2022 Tex. App. LEXIS 2988, at *9 (Tex. App.—Beaumont May 5, 2022, no pet.) (mem. op.). As stated above, a party seeking reversal based on evidentiary error must show that the error probably resulted in an improper judgment, which usually requires the complaining party to show that the judgment turns on the challenged evidence. *See Alvarado*, 897 S.W.2d at 753-54. USA Today failed to meet this requirement. *See id.*; *see also* Tex. R. App. P. 44.1(a); *U-Haul Int'l, Inc.*, 380 S.W.3d at 136. Issue four is overruled.

TCPA Motion to Dismiss

Standard of Review

We review a trial court's denial of a TCPA motion to dismiss under a de novo standard of review. *See Walker v. Hartman*, 516 S.W.3d 71, 79-80 (Tex. App.—Beaumont 2017, pet. denied) (citation omitted); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) (citations omitted). Our de novo review includes whether the parties met their burdens of proof under the TCPA and whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims. *See Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 45-46 (Tex. 2021). We consider the pleadings and affidavits stating the allegations upon which the claim or defense is based in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015) (orig. proceeding); *Push Start Indus., LLC v. Hous. Gulf Energy Corp.*, No. 09-19-00290-CV, 2020 Tex. App. LEXIS 9337, at *6 (Tex. App.—Beaumont Nov. 30, 2020, no pet.) (mem. op.) (citations omitted). We consider evidence a court could consider under Rule 166a of the Texas Rules of Civil Procedure. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

<u>Burden of Proof Under the TCPA</u>

The TCPA provides a three-step process courts must follow in deciding whether to dismiss a "legal action" to which the TCPA applies. *Montelongo v. Abrea*, 622 S.W.3d 290, 295-96 (Tex. 2021). First, the defendant who has moved to dismiss must show by a preponderance of the evidence that the plaintiff's claim is based on, relates to, or is in response to the movant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)).

Next, if the defendant meets its burden, the burden shifts to the plaintiff to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* at 899 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)); *Montelongo*, 622 S.W.3d at 296. Finally, if the plaintiff makes this showing, the court will dismiss the action if the defendant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Montelongo*, 622 S.W.3d at 296. Prima facie means "at first sight," and under the TCPA, a prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023) (citing *S&S Emergency*

*Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *Prima facie*, Garner's Dictionary of Legal Usage (3d ed. 2011)). Evidence is "clear and specific" if it provides enough detail to show the factual basis for the claim. *Id.* (citing *In re Lipsky*, 460 S.W.3d at 590-91). Such evidence need not be conclusive, uncontroverted, or found credible. *Id.* (citing *In re Lipsky*, 460 S.W.3d at 590).

On the third step of the analysis, we examine whether the defendants have established that they are entitled to judgment as a matter of law on their affirmative defenses. *See Rogers v. Bryan*, No. 09-21-00338-CV, 2023 Tex. App. LEXIS 505, at *49 (Tex. App.—Beaumont Jan. 26, 2023, no pet.) (mem. op.). When determining whether a party who seeks to dismiss the plaintiff's case under the TCPA has met its burden on this third step, we apply a standard of review essentially equivalent to a motion for summary judgment on an affirmative defense. *Id.*; *H-E-B, L.P. v. Maverick Int'l, Ltd.*, No. 09-21-00311-CV, 2022 Tex App. Lexis 7428, at *10 (Tex. App.—Beaumont Oct. 6, 2022, pet. granted, judgm't vacated w.r.m.) (mem. op.).[12]

---

[12] *See also Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 Tex. App. LEXIS 3055, at *38 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.) (mem. op.) (citing *Zidan v. Zidan*, No. 05-20-00786-CV, 2022 Tex. App. LEXIS 8744, at *11 (Tex. App.—Dallas Nov. 30, 2022, no pet.) (mem. op.); *Rosales v. Comm'n for Lawyer Discipline*, No. 03-18-00725-CV, 2020 Tex. App. LEXIS 3350, at **9-10 (Tex. App.—Austin Apr. 22, 2020, no pet.) (mem. op.); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 708 (Tex. App.—Amarillo 2018, pet. denied)); *see also Graves v. Evangelista-Ysasaga*, No. 14-22-00137-CV, 2023 Tex. App. LEXIS 399, at **14-16 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet. denied) (mem. op.) (defendant failed to prove they were entitled to judgment as a matter of law where a fact issue existed on defendant's affirmative defense).

Matter of Public Concern

Our first task is to determine whether Ryan's defamation claims as alleged in its petition are based on or in response to USA Today's exercise of the right of free speech or pertain to communications made in connection with a matter of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). In this case, Ryan's defamation claims related to USA's publication of articles referencing Ryan and the activities and actions Ryan allegedly undertook in representing its clients, as well as actions that were allegedly taken by Arizona and North Dakota state officials, certain judicial proceedings that involved Ryan's clients, and public funds. We conclude that the stories USA Today published on these matters pertained to "political, social or other interest[s] to the community[]" and to "subject[s] of concern to the public." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7).

Appellant argues that Ryan does not dispute that its defamation claim is subject to the TCPA because its defamation claim relates to USA Today's right of free speech or pertained to a matter of public concern. Additionally, we agree that Ryan's claims are based on USA Today's exercise of its free speech. USA Today has satisfied its burden on the first step of the analysis, and therefore we proceed to the second step of the analysis. *See Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023); *Netflix, Inc. v. Barina*, No. 04-21-00327-CV, 2022

28

Tex. App. LEXIS 6637, at *6 (Tex. App.—San Antonio Aug. 31, 2022, pet. denied) (mem. op.).

Plaintiff's Prima Facie Case

Next, we must determine whether Ryan established a prima facie case of defamation, establishing it has "clear and specific evidence" to support each essential element of its claim. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 898 (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)); *Montelongo*, 622 S.W.3d at 296. To recover on a claim for defamation, a plaintiff must prove (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) that proximately caused damages.[13] *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020); *Anderson v. Durant*, 550 S.W.3d 605, 617-18 (Tex. 2018); *In re Lipsky*, 460 S.W.3d at 593.

> The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. "Actual malice" in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth.

[13] The parties do not dispute whether the challenged statements were published to a third party. The challenged statements appeared in *USA Today*, *The Arizona Republic*, on Twitter, or on *The Arizona Republic*'s podcast "The Gaggle." We conclude that Ryan met the publication element of its claim for defamation by clear and specific evidence. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

*In re Lipsky*, 460 S.W.3d at 593 (citations omitted). "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id.* at 590-91.

### a. Did Ryan establish that the challenged statements are defamatory about Ryan?

Our first step in evaluating a defamation claim is to determine whether the challenged statements are reasonably capable of a defamatory meaning about Ryan. *See Anderson*, 550 S.W.3d at 617-18; *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018). A statement is defamatory if it "tends to injure a [] person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury." Tex. Civ. Prac. & Rem. Code Ann. § 73.001; *see also Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 150 & n.35 (Tex. 2014) (a corporation may bring a claim for libel); *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960) (corporations and partnerships may bring a claim for libel). A statement is defamatory per se if it is so obviously harmful that general damages are presumed, and generally involves accusing someone of a crime, of having a loathsome disease, of engaging in sexual

30

misconduct, or that adversely reflects on a person's fitness to conduct his business or occupation. *See In re Lipsky*, 460 S.W.3d at 596.

> We do not decide whether the alleged statements are true or false, instead
>
> . . . we judge the truth or falsity of an allegedly defamatory statement by identifying the "gist" of what the statement conveys about the plaintiff to a reasonable reader of the entire article. If the gist of the challenged statement, within the context of the article as a whole, is true, then the statement is considered substantially true and therefore not actionable—even if the statement errs in the details.

*See Polk Cnty. Publ'g Co. v. Coleman*, No. 22-0103, 2024 Tex. LEXIS 124, at \*3 (Tex. Feb. 16, 2024); *see also D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). Identifying the gist of an alleged defamatory publication and deciding whether a publication is capable of a defamatory meaning are questions of law for the court. *See Coleman*, 2024 Tex. LEXIS 124, at \*11 (citing *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)). We determine a publication's "'gist or meaning by examining how a person of ordinary intelligence would view it[,]'" asking how a "'hypothetical reasonable reader'" would understand the publication, and not how any particular reader actually understood it. *See id.* at \*11 (quoting *Neely v. Wilson*, 418 S.W.3d 52, 64 (Tex. 2013); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004)). We consider a publication "as a whole[]" and "in light of the surrounding circumstances" in determining whether it communicates defamatory falsehoods, and we may also consider an entire series of articles treating the same subject matter to determine defamatory meaning. *Id.* at \*16; *Scripps NP*

31

*Operating, LLC v. Carter*, 573 S.W.3d 781, 790-91 (Tex. 2019); *Rosenthal*, 529 S.W.3d at 434.

"[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner*, 38 S.W.3d at 115. Even so, it is not defamatory if it contains "'specific statements that err in the details but that correctly convey the gist of a [true] story[.]'" *Coleman*, 2024 Tex. LEXIS 124, at *11 (quoting *Neely*, 418 S.W.3d at 63-64). We also ask whether an alleged defamatory statement is more damaging to the plaintiff's reputation in the mind of the average reader than a truthful statement would have been. *See id.* at *20 (citing *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990)).

In Ryan's First Amended Petition, Ryan alleges that "USA Today falsely accuse[d] Ryan of corruption and unethical business practices by misrepresenting the facts about Ryan's work on the dyed diesel [tax] refund request in Arizona[.]" Ryan also alleges that USA Today "intentionally misrepresented a number of material facts" about Ryan's work in Arizona—by describing its work as secretive, by suggesting it proposed a payout over time to avoid legislative scrutiny, by falsely reporting there was no legal basis for Ryan's position on the tax refund request, by creating a false impression by failing to report that Ryan initially obtained a

favorable ruling in Tax Court, by misleading readers into thinking that Governor Ducey had fired Woodruff and Nülle over the dyed diesel matter rather than the education funding proposition, by suggesting that Ryan violated Arizona's conflict of interest law, and by claiming there was an FBI investigation and implying that Ryan was the subject of the investigation.

Ryan also alleges that "USA Today falsely accuse[d] Ryan of corruption and unethical business practices by misrepresenting the facts about Ryan's work on the oil well production equipment refund request in North Dakota." According to Ryan, USA Today falsely claimed Ryan had filed "questionable" or "frivolous" refund claims in North Dakota, and USA Today implied that Ryan engaged in unethical business practices by "issue shopping" different state tax department employees.

Ryan's petition identifies 9 statements that Ryan claims are false and defamatory when standing alone or when viewed together because they create "a substantially false and defamatory impression of Ryan." According to Ryan, the challenged statements "create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way."

In addition to a defamation by "gist" claim, a party may establish that the defamatory meaning arises implicitly from a distinct portion of the article that contains a factually defamatory statement rather than from the article's "as-a-whole gist." There is a distinction between an "as-a-whole" gist claim and "partial"

33

implication claim. *Tatum*, 554 S.W.3d at 622, 628-29 (acknowledging and discussing the differences). In *Tatum*, the Court explained that the differences matter especially in two contexts:

> The first relates to the substantial-truth doctrine. "A broadcast with specific statements that err in the details but that correctly convey the gist of a story is substantially true." *Neely*, 418 S.W.3d at 63-64. If the plaintiff demonstrates substantial truth, the doctrine "precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details . . . ." *Turner*, 38 S.W.3d at 115. We have never held, nor do we today, that a true implication—as opposed to a true gist—can save a defendant from liability for publishing an otherwise factually defamatory statement. Second, the difference between gist and implication matters when considering the requirements that the U.S. Constitution imposes on defamation law.

*Id.* at 629.

Here, we agree with Ryan that the articles published by USA Today present Ryan in an unfavorable light, and we conclude the articles do so both as a whole and in discrete sections by implication. *See id.* at 627 (discussing defamation by implication where a publication "gets the details right but fails to put them in the proper context and thereby gets the story's 'gist' [] wrong[]") (quoting *Turner*, 38 S.W.3d at 115). In particular, we note an August 31, 2021 article in *The Arizona Republic/USA Today* reads, "FBI examining $100M tax refund push by Arizona Gov. Ducey staffers after Arizona Republic/USA TODAY investigation[.]" The first sentence of the article states, "The FBI's Public Corruption unit is investigating efforts by Arizona Gov. Doug Ducey's past and current staffers [] to push for a

34

closed-door deal to issue tax refunds worth as much as $100 million to aid one of Ducey's campaign supporters." The focus in the title and the first sentence appears to be on Ducey, and not on Ryan, but the title alludes to a tax refund of $100 million to aid one of Ducey's campaign supporters, and then the only campaign supporter discussed by name in the article is G. Brint Ryan, the founder of Ryan, LLC. The article later reports that Nülle told USA Today that the FBI contacted him to see if he had received any threats after the Arizona Republic published its series of articles, and the article states that Nülle stated "that the FBI had interviewed him several times in May regarding the refund campaign[]" and, that he stated "[t]hey are investigating the whole situation, but I don't know what they have[.]" The article further stated that the reporter had contacted the FBI and a spokeswoman stated, "As a matter of course, the FBI does not confirm or deny the existence of investigations." The article in question then focuses more on Ryan and less on Ducey. For example, it states, "G. Brint Ryan, a major GOP contributor, and his firm [Ryan, LLC] used insiders to gain access to Ducey to try to get what Ryan wanted and how the Texas millionaire could help Ducey's political ambitions." And that statement is not attributed to any third party. The article further states, "If Ryan's client had won that refund, it would have set precedent enabling similar companies to claim more than $100 million in refunds from state coffers, according

to Department of Revenue officials, and Ryan's firm would have been able to garner millions in commissions."

Other articles dated July 14, 2021, in *The Arizona Republic* and *USA Today* are titled or contain headlines or statements such as "He made a fortune winning tax refunds. He needed help from Arizona's most powerful leader[,]" "Arizona's governor had political aspirations. He also had a pipeline to a big GOP supporter[,]" "They were Gov. Doug Ducey's top officials. Then they went after a huge tax refund[,]" "She was the governor's deputy chief of staff. The tax deal she pushed would benefit her father's mining firm[,]" "They stood up against a tax refund that would have cost Arizonans. It cost them their jobs[,]"; and a January 10, 2022 *USA Today* article titled "Firm helps companies get rich with 'questionable' tax refunds, tactics that exhaust officials[.]"

We conclude that Ryan met its prima facie burden to show a hypothetical reasonable reader would understand the articles imply that Ryan, as well as the Governor of Arizona, and the former State employees hired by Ryan, had engaged in unethical, if not unlawful, conduct or even corruption, and further that Ryan and the Governor were under investigation by the FBI for their conduct or possible corruption. *See Isaacks*, 146 S.W.3d at 157. Ryan met its burden to show that the complained-of statements are defamatory as to Ryan because they are "'reasonably capable'" of injuring Ryan's reputation. *See Tatum*, 554 S.W.3d at 637-38 (quoting

36

*Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)); *see also*

*Anderson*, 550 S.W.3d at 617-18; *In re Lipsky*, 460 S.W.3d at 593. Viewing the

evidence in the light most favorable to the nonmovant Ryan, as we must, we

conclude that Ryan presented clear and specific evidence from which a person of

ordinary intelligence would view the "gist" of the challenged statements as

defamatory. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *Rosenthal*, 529

S.W.3d at 434; *In re Lipsky*, 460 S.W.3d at 586-87; *Push Start Indus., LLC*, 2020

Tex. App. LEXIS 9337, at *6.

b. *Did USA Today act with the requisite degree of fault?*

The degree of fault a plaintiff must prove in its defamation claim depends on

whether the plaintiff is a private figure or public or limited-purpose public figure.

*See In re Lipsky*, 460 S.W.3d at 593. "A private individual need only prove

negligence, whereas a public figure or official must prove actual malice." *Id.* (citing

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). In the context of

a defamation claim, a defendant is negligent if it knew or should have known a

defamatory statement was false unless the content of the false statement would not

warn a reasonably prudent publisher of its defamatory potential. *See Rosenthal*, 529

S.W.3d at 440. "Negligent conduct is determined by asking 'whether the defendant

acted reasonably in checking the truth or falsity or defamatory character of the

communication before publishing it.'" *Scripps Tex. Newspapers, L.P. v. Belalcazar*,

37

99 S.W.3d 829, 837 (Tex. App.—Corpus Christi 2003, pet. denied) (quoting Restatement (Second) of Torts § 580B cmt. g (1977)).

Ryan maintains that it is a private party and only negligence is required. In USA Today's motion to dismiss under the TCPA, it did not take a position on whether Ryan was a private person or public figure, nor did USA Today argue about the degree of fault that Ryan must prove. USA Today also does not argue on appeal that Ryan is a public figure.[14]

Assuming without deciding that Ryan is not a public figure and that it need only establish negligence, the record in this case provided sufficient evidence to make a prima facie case that USA Today negligently published the alleged defamatory statements. Exhibits attached to Ryan's response to the motion to dismiss include letters from Ryan's counsel to USA Today dated November 2, 2021 and January 28, 2022, advising USA Today that USA Today had falsely reported about Ryan's work in Arizona and North Dakota and stating that "The [Arizona] Republic knew before publication, those accusations are demonstrably false."

The Arizona Tax Court's initial decision on the dyed diesel tax refund is a published decision, issued on September 4, 2018. *See Carter Oil Co., Inc. v. Ariz.*

---

[14] That said, we note that in the Answer filed by USA Today to the Petition, it alleged, "Plaintiff is a public figure for purposes of this action and is required to prove actual malice by clear and convincing evidence. The statements at issue were made without actual malice."

38

*Dep't of Revenue*, No. TX 2016-001218, 2018 Ariz. Tax LEXIS 11 (Ariz. Tax Ct. Sept. 4, 2018), *rev'd by* 460 P.3d 808 (Ariz. App. 2020). The facts stated in that reported opinion explain that Carter Oil sold dyed diesel fuel to Hanson Aggregates Arizona, Inc. for use in heavy equipment used in gravel mining and processing in Arizona. *See* 460 P.3d at 810. The Arizona Tax Court ruled in favor of Ryan's client (Carter Oil Co.) granting a refund for the dyed diesel tax, but the Arizona Court of Appeals reversed that decision. *Id.* The Arizona Court of Appeals explained that the appeal presented the issue of "whether the dyed diesel [] is 'machinery or equipment' used directly in mining and processing operations." *Id.* at 811. The Court concluded that dyed diesel fuel is not machinery or equipment and that the fuel is "subject to the transaction privilege tax but not the fuel tax." *Id.* at 813, 815. So, Ryan's client Carter Oil initially prevailed in the Arizona tax court, and that decision was reversed on appeal.

We read the Arizona Court of Appeals decision as an opinion based on statutory construction, and although the Arizona Court of Appeals found against Ryan's client, the court did not include any statement or conclude that Carter Oil's position and argument was either "baseless" or "frivolous," nor did it find that Carter Oil's argument was unsupported by any legal authority or contrary to "long-standing tax law[,]" as USA Today had represented. *See id.* at 811.

39

As to Ryan's work on behalf of its client in North Dakota, the refund sought by Ryan's client Equinor Energy LP concerned a request for a refund on sales and use tax for certain oilfield machinery and equipment—including separators used in gas collection and processing. The clerk's record in this case includes a copy of a January 7, 2022 Order by a North Dakota District Court reversing the state's Tax Commissioner's denial of a tax refund. *See Equinor Energy LP v. State of North Dakota*, No. 08-2021-CV-00309 (Burleigh Cnty. Dist. Ct. Jan. 7. 2022). As explained in the Order, Equinor had sought a refund of more than $5 million, and although the Tax Commissioner allowed a large portion of the request, it denied over two million dollars of the request rejecting the argument that pertained to separators being tax exempt. Equinor appealed the decision of the Tax Commissioner to the District Court. The North Dakota District Court found that the Tax Commissioner's ruling which denied the refund was not supported by a preponderance of the evidence and "not in accordance with North Dakota law." The District Court stated:

> [] Equinor asserts that the Commissioner's Order should be reversed on the following grounds: 1) the findings of fact are not supported by a preponderance of the evidence, 2) the findings of fact do not sufficiently address the evidence presented by Equinor at the August 11-12, 2020 hearing, 3) the conclusions of law and order are not supported by the findings of fact, and 4) the Commissioner's Order is not in accordance with North Dakota law. The Court finds that the Commissioner's order is reversed on all grounds cited by Equinor.

The District Court reversed and remanded the matter for findings and conclusions consistent with its Order.

40

According to Ryan, "Three days after the Tax Court ruling in Equinor's favor, Gannett published the North Dakota Article and misrepresented and concealed multiple facts about Ryan's work in North Dakota sufficient to make the article substantially false[.]" Our record lacks any evidence of what occurred after the remand, but nothing in the record reflects a defeat for Ryan's client's legal position in North Dakota, nor does the record support USA Today's statement that Ryan's legal position on behalf of its client Equinor in the North Dakota matter was "questionable" or "frivolous." Neither the Arizona Court of Appeals opinion nor the North Dakota District Court Order found the positions taken by Ryan's clients—Carter Oil and Equinor Energy, respectively—were frivolous or questionable.

Further, nothing in Craig Harris's affidavit reflects that he interviewed anyone with Ryan before publishing the news articles at issue. *See Rosenthal*, 529 S.W.3d at 440 (concluding that a magazine acted with negligence when it "failed to take reasonable steps to verify the accuracy of the story's gist and should have known the gist was false"). According to Ryan, even when Ryan's counsel informed USA Today of the false or misleading statements in its reporting, and specifically referenced the legal decisions in Arizona and North Dakota, USA Today did not issue a retraction or correction. *See CBS Stations Grp. of Tex., LLC v. Burns*, No. 05-21-00042-CV, 2021 Tex. App. LEXIS 7907, at **10-11 (Tex. App.—Dallas Sept. 27, 2021, no pet.) (mem. op.) (concluding a plaintiff had established negligence

where plaintiff notified a television station and objected to its reporting as harmful, the station manager said "she would take care of it[]" but the station reran the story and left the story posted online); *cf. Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987) ("[R]eadiness to print a retraction weighs against 'malice.'"). We conclude that Ryan has presented at least a minimum quantum of evidence that USA Today acted negligently when making the statements that are the subject of this lawsuit. *See USA Lending Grp., Inc.*, 669 S.W.3d at 200; *Rosenthal*, 529 S.W.3d at 440.

c. *Did the plaintiff establish it sustained damages as a result of the statements?*

Assuming without deciding that the statements were not defamatory per se, Ryan bears the burden to present a minimum quantum of clear and specific evidence that it suffered damages as a result of the challenged statements by USA Today. *See In re Lipsky*, 460 S.W.3d at 593. "[G]eneral averments of direct economic losses and lost profits[]" do not satisfy the TCPA's requirement of clear and specific evidence unless the evidence includes "specific facts illustrating how [a defendant's] alleged remarks about [the plaintiff's] activities actually caused such losses." *Id.* at 593.

The affidavit of Damon Chronis, Ryan's president, was attached as an exhibit to Ryan's response to USA Today's motion to dismiss. Therein, Chronis states, in relevant part in paragraph 19:

> As a result of [USA Today's] defamatory statements concerning Ryan,
> Ryan has lost business opportunities and customers with multiple long-

42

> time clients and new clients. For example, after [USA Today] published its defamatory statements about Ryan, Deloitte LLP terminated its engagement with Ryan and explicitly cited [USA Today's] reporting as a primary reason for terminating their agreement. As a result, Ryan suffered losses of approximately $100,000 from lost income from Deloitte for 2021. Ryan has also spent hundreds of thousands of dollars in an attempt to repair the harm to its reputation and business caused by [USA Today].

USA Today objected to paragraph 19, sentence 1 as conclusory, and sentence 2 as hearsay, without further elaboration. The trial court overruled these objections and we have already determined in our discussion on appellate issue four, that we cannot say the trial court abused its discretion in making its evidentiary rulings. Based on all of the evidence Ryan presented, we conclude that Ryan presented clear and specific evidence of how USA Today's statements resulted in some damage to Ryan. *See id.* at 591; *see also Innovative Block of S. Tex., Ltd.*, 603 S.W.3d at 418 (explaining that damages for injury to reputation are considered general damages); *Montano*, 2021 Tex. App. LEXIS 5654, at *17 (concluding, in part, that a statement in an affidavit that the plaintiff had lost business clients was clear and specific evidence of damages).

USA Today's Affirmative Defenses

As previously explained, in the third step of our TCPA analysis, when the nonmoving party has satisfied its burden to present clear and specific evidence of a prima facie claim for relief, the burden then shifts back to the moving party to "establish[] an affirmative defense or other grounds on which the moving party is

entitled to judgment as a matter of law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d). We apply the standard for summary judgment, and the movant must establish every element of its affirmative defense as a matter of law, such that a reasonable factfinder can draw only one conclusion from the evidence. *See* Tex. R. Civ. P. 166a; *Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 Tex. App. LEXIS 3055, at *38 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.) (mem. op.) (citing *Draughon*, 631 S.W.3d at 88; *City of Keller*, 168 S.W.3d at 815-16); *see also Graves*, 2023 Tex. App. LEXIS 399, at **15-16 (defendant failed to prove they were entitled to judgment as a matter of law where a fact issue existed on the defense).

USA Today argues that, even if we conclude that Ryan established a prima facie case of defamation, USA Today is still entitled to dismissal under the TCPA because it is entitled to judgment as a matter of law on its affirmative defenses. Specifically, USA Today argues that Ryan cannot overcome USA Today's affirmative defenses, which we summarize as follows:

> Accurate reporting: USA Today asserts that the statements at issue are true or substantially true and accurate reporting of third-party allegations about matters of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.005(a)-(b)
>
> Privileged reporting about official proceedings or the acts of public officials: USA Today asserts that the statements at issue are fair, true and impartial accounts of judicial, executive, or other official proceedings to administer the law. *See id.* § 73.002(b)(1), (2).

<u>Privileged commentary on matters of public concern</u>. *See id.* § 73.002(b)(2)

<u>Constitutionally-protected opinion</u>. *See, e.g.*, *Tatum*, 554 S.W.3d at 638 (explaining that statements of opinion that "are not verifiable as false" are not defamatory).

According to USA Today's motion to dismiss, "[a]s the plaintiff, Ryan carries the burden on all of these elements."[15] While it is true that Ryan carries the burden to show a prima facie claim, USA Today carries the burden on its affirmative defenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d). The media's privilege to report on judicial or other official proceedings is an affirmative defense on which the defendant bears the burden of proof. *See KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016) (citing *Denton Publ'g Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970). Likewise, truth and the privilege of fair comment on matters of public concern are affirmative defenses. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (explaining that, in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990), the Court explained that the privilege of fair comment was incorporated into the common law as an affirmative defense to defamation); *Randall's Food Mkts.,*

---

[15] Appellants erroneously cite to the prior version of the statute, which provided that a court shall dismiss the action if the movant established a defense "by a preponderance of the evidence[,]" whereas the current version of the statute requires the movant to prove it "is entitled to judgment as a matter of law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d) (amended 2019).

*Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) ("Truth is a complete defense to defamation.").

That said, statements that are not verifiable as false, such as mere opinions or subjective assertions, are constitutionally protected and are not actionable in defamation. *See Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). USA Today argued in the trial court that "[a]ny accusation that Ryan's legal position was unsupported [by law] is subjective opinion[]" and not actionable as defamatory. In response to the motion to dismiss, Ryan offered the Chronis affidavit in which Chronis attested that Ryan's work on the Arizona dyed diesel fuel matter "included a detailed review of the relevant Arizona statutes and case law[]" and stated that Ryan initially prevailed in Tax Court. As to Ryan's work in North Dakota, Chronis attested that "Ryan's position was supported by the plain language of the statute, legislative history, expert witness testimony, and other evidence[,]" that Ryan had provided extensive documentation for its position, and that the North Dakota Tax Court found that "it was the tax commissioner's position—not Ryan's—that was found by the Tax Court to be meritless, 'arbitrary,' and not supported by the law." We conclude that the filings and rulings in the administrative and judicial proceedings at issue are verifiable. *See id.* at 570.

Nothing in our record reflects that either the Arizona Court of Appeals or the North Dakota Tax Court found Ryan's clients' arguments had been made in "bad faith" or without citation to legal authority. Simply stated, the Arizona Court of Appeals reversed the tax court decision that had been issued in favor of Ryan's client's legal position, and the North Dakota Court reversed the North Dakota Tax Commissioner's denial of the refunds and ruled in favor of Ryan's client and agreed with Ryan's argument. At a minimum, we conclude that USA Today has fallen short in meeting its burden on their affirmative defense because the evidence in the record established a question of fact exists about whether Ryan's work on behalf of its clients was "unsupported" by the law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *City of Keller*, 168 S.W.3d at 815-16; *Rockman*, 2023 Tex. App. LEXIS 3055, at *38; *Graves*, 2023 Tex. App. LEXIS 399, at **15-16.

USA Today also argues that it "accurately reported the allegations of various public officials, independent observers, and others who questioned Ryan's tactics and the work of its lobbyists." Ryan countered that many of the statements it regards as defamatory "are not sourced and therefore could not be shielded by the third-party allegations privilege[,]" and they also "create a defamatory impression by misrepresenting material facts, omitting material facts, and juxtaposing facts in a misleading way." Ryan argued that the statements at issue cannot be categorized as protected opinion, and that USA Today's reporting on official proceedings

47

"contained key omissions so as to make its statements on those proceedings substantially false."

We have previously explained herein that Ryan met its prima facie burden to show that the "gist" of the challenged statements is defamatory as to Ryan. *See Coleman*, 2024 Tex. LEXIS 124, at *3; *Rosenthal*, 529 S.W.3d at 434.[16]

The headline of an August 31, 2021 *USA Today* article reads, "FBI examining $100M tax refund push by Arizona Gov. Ducey staffers after Arizona Republic/USA TODAY investigation[.]" The text of the article states, in relevant part,

> Nulle said in a phone interview that an FBI agent had called to check on the safety of him and his family. The agent, from the Public Corruption Unit's Phoenix office, wanted to know if Nülle had received any threats after the series was published.
> . . .
> "They are investigating the whole situation, but I don't know what they have," Nulle said. . . .
> . . .
> FBI Spokeswoman Brooke Brennan said on Monday: "As a matter of course, the FBI does not confirm or deny the existence of investigations."

---

[16] That said, we also note some of the statements that Ryan has challenged were made on "The Gaggle," a podcast of *The Arizona Republic*, and those verbal, unwritten statements may not be covered under the privileges expressly provided for in Chapter 73 of the Civil Practice and Remedies Code because they were oral and not expressed in written or other graphic form. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 73.001 (defining libel as "a defamation expressed in written or other graphic form"), 73.002(a) (defining privileged matters and stating, "The publication by a newspaper or other periodical of a matter *covered by this section* is privileged and is not a ground for a *libel* action.") (emphasis added). We need not decide this question here.

The article goes on to report that Governor Ducey knew of no FBI investigation and his office had not been contacted by the FBI. According to evidence submitted to the trial court, Ryan's president states

> . . . Ryan has never been contacted by the FBI in connection with an investigation and was completely unaware of the existence of any investigation into any of Ryan's activities in Arizona. In the nearly year and half since [USA Today] first published that claim, Ryan still has not been contacted by the FBI.

Considering the evidence in a light most favorable to the nonmovant, as we must in our TCPA review, we conclude that the evidence in the record creates a genuine fact issue on whether USA Today accurately reported whether the FBI was investigating Ryan, and that fact issue precludes USA Today from proving it is entitled to judgment as a matter of law on the affirmative defense of accurate reporting on this aspect of the alleged defamatory gist claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(d), 73.005(a)-(b); *City of Keller*, 168 S.W.3d at 815-16; *Rockman*, 2023 Tex. App. LEXIS 3055, at *38. We have already discussed that Ryan sufficiently established a prima facie case showing its "gist" claim against USA Today as to the characterizations of the legal proceedings in Arizona and North Dakota, the FBI investigation, and as to Ryan's related activities for its clients. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.002(b)(1)(A); *Coleman*, 2024 Tex. LEXIS 124, at *11. And we conclude that USA Today has not met its burden to show that

49

it is entitled to judgment as a matter of law on its claimed defenses. *See id.* § 27.005(d); *Rockman*, 2023 Tex. App. LEXIS 3055, at *38.

## Conclusion

To summarize, we conclude that the trial court did not err in finding that Ryan satisfied its burden to present clear and specific evidence in support of its claim for defamation, nor did the trial court err in concluding that USA Today failed to establish that it is entitled to judgment as a matter of law on its defenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c), (d); *ExxonMobil Pipeline Co.*, 512 S.W.3d at 898; *Rockman*, 2023 Tex. App. LEXIS 3055, at *38. And we overruled USA Today's evidentiary complaint because we cannot say the trial court abused its discretion. Therefore, the trial court did not err by denying USA Today's motion to dismiss under the TCPA. *See Adams*, 547 S.W.3d at 897. Having overruled all of Appellants' issues, we affirm the order of the trial court.[17]

---

[17] We previously explained above that this Court concluded the trial court erred in failing to transfer venue to Dallas County. *See In re USA Today*, No. 09-23-00140-CV, 2023 Tex. App. LEXIS 7963 (Tex. App.—Beaumont Oct. 19, 2023, orig. proceeding) (mem. op.) (finding that when a limited liability company sues for defamation, the county in which the plaintiff resided at the time of the accrual of the cause of action is the county where the limited liability company maintains its principal office, and because the plaintiff did not file its suit for defamation in a county of proper venue, the court conditionally granted mandamus relief). The transfer of venue of the defamation case has been held pending a ruling and final mandate in this Court on the TCPA motion to dismiss. Once the mandate issues in this appellate matter (No. 09-22-00432-CV), then the trial court and district clerk may implement the transfer of venue outlined in our judgment in No. 09-23-00140-CV.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on September 19, 2023
Opinion Delivered May 2, 2024

Before Horton, Johnson and Wright, JJ.